## NATIONAL LABOR RELATIONS BOARD
## v. ED. FRIEDRICH, Inc.
### No. 9518.

Circuit Court of Appeals, Fifth Circuit.

Jan. 4, 1940.

Robert B. Watts, Gen. Counsel, National Labor Relations Board, of Washington, D. C., and Warren Woods, Regional Atty., National Labor Relations Board, of Atlanta, Ga., for petitioner.

J. D. Dodson, of San Antonio, Tex., for respondent.

Before FOSTER, HUTCHESON, and HOLMES, Circuit Judges.

HUTCHESON, Circuit Judge.

The Board found: that the Ed. Friedrich, Inc., Employee's Union was company dominated and supported; that a closed shop agreement between respondent and the union was therefore void and of no effect; and that respondent was guilty of unfair labor practices in dominating and supporting the union and in discharging one Frank Baranek because he refused to join it, all in violation of Sec. 8, National Labor Relations Act.[1] It ordered respondent: to cease and desist from its unfair labor practices; to withdraw recognition from and disestablish the union as employees' representative; and to reinstate Baranek with back pay without deduction for sums earned by Baranek on work relief projects, and to post the usual notices. It has petitioned to enforce the order.

Respondent complaining of the hearing as unfair, and of the findings and order as unsupported by evidence, is here resisting enforcement. The complaint against the hearing as unfair presents three points: that the examiner while issuing all subpoenas requested by the Board, refused those requested by respondent; that the examiner unduly limited respondent's right of cross-examination; and without its having been made a party or given a hearing, the union was ordered disestablished as bargaining agent.

▮▮ We find nothing of substance in the complaints of the procedure at the hearing. Certainly respondent had the same right as the Board to have the examiner issue subpoenas on its behalf and if his failure to do so had resulted in depriving respondent of substantial evidence, we should order the case sent back for the taking of that testimony.

But the record shows, indeed respondent admits, that every witness for whom he asked subpoenas was actually placed on the stand or was available and that the examiner's refusal to issue subpoenas did not deprive him of a single witness.

▮ The same want of substance appears in respondent's complaint as to the examiner's refusal to permit him to cross-examine Baranek. The matter inquired about was not material and if the cross-examination had elicited the answer respondent desired, the findings would not have been affected thereby. Proceedings of this kind are substantial in their nature, and however much respondent's spirit may be galled by unjust and arbitrary rulings, they furnish no ground for action here, unless injury has resulted from them. Respondent's other procedural complaint, that the union was ordered disestablished as bargaining agent, without its having been a party to the proceedings, is equally without substance. The proceeding here was not one against the employees' union, the order did not run against it. It was one against the company. The presence of the union "was not necessary in order to enable the Board to determine whether respondents had violated the statute or to make an appropriate order against them." N. L. R. B. v. Pennsylvania Greyhound Lines, 303 U.S. 261, 58 S.Ct. 571, 576, 82 L. Ed. 831, 115 A.L.R. 307. The complaint on the merits is; the evidence being undisputed that no officer or stockholder of respondent has expressed an opinion with respect to or preference among labor unions, or made membership or not therein, a condition of employment; and there being no evidence that any supervisory employees had either express or implied authority to act for respondent at any time with respect to union activities; there is no basis for a finding by the Board that the acts of supervisory employees in forming and conducting the employees' union, were the acts of respondent. It is therefore insisted that since the statute[2] guarantees employees the "right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing * * *", and authorizes[3] the making of a closed shop contract, and since it is undisputed that the cause of Baranek's discharge was his

---

[1] Sec. 158(1, 2, 3 & 4), Title 29 U.S. C.A.

[2] Sec. 157, Title 29 U.S.C.A.

[3] Sec. 158(3), Title 29 U.S.C.A.

failure to join the union, the findings by the Board of unfair labor practices are wholly without support in the . evidence and the order based on such findings may not be enforced.

The Board replying, points out that in order to establish company domination or support of an unaffiliated union, it is not necessary to prove overt or express acts or words of domination or support by stockholders or executive officers of the company. A showing of covert support or domination is sufficient. It is sufficient to show acts of supervisory employees and a general setup of such a nature and so carried out as to reasonably warrant the inference that the union was a company project.[4] It insists, that. this record is replete with evidence of such acts and such a setup, and that they are vigorous and eloquent testimony to the fact that the employee's union was both fostered and dominated by the company. We agree. Not only was there antagonism shown by two of the foremen to the Mill Workers Local, the affiliated union then beginning an organizational campaign among respondent's employees, but under the auspices and leadership of foremen and supervisory employees, petitions were drafted reciting: "That we the undersigned, hereby petition Ed. Friedrich, Inc. to allow us to form our own local." On the following day, after intensive solicitation, through the plant on working time, the signatures of 90% of the employees had been procured and presented by Bergman, assistant foreman, to the respondent officers. On that same day, which was pay day, the employees received in their pay envelopes, a notice from the company that it had been reported "that over 95% of our employees are desirous of forming an employee's union which is apparently and entirely satisfactory with us. We are glad to learn of your plans and we will be pleased to meet with you any time after Monday, July· 12th, to discuss this matter and enter negotiations." This was signed by Richard Friedrich, vice-president, and by Ed. Friedrich, president, and Geo. Friedrich, secretary and treasurer.

Thereafter a notice appeared on respondent's bulletin board announcing a labor meeting in employee's recreation hall and a committee from the Mill Workers Local asked Richard Friedrich's permission to address the meeting and present the local worker's point of view. Friedrich refused to permit this or to permit the Mill Workers to use the bulletin board or distribute leaflets in the plant. At the July 15 meeting, the assistant foreman, Bergman, opened the meeting and relinquished the chairmanship to Brinkoeter, respondent's general superintendent, who introduced Arnold, an attorney, invited several days before by Bergman and Brinkoeter to attend. Arnold then read the governing articles of an inside union, obtaining at the plant of a furniture company of which he was counsel and they were then adopted with minor variations. The employees were then informed that they could become members of the new organization by signing their names in a ledger book; and elections for the executive committee were conducted at the plant during working hours. This was followed by the election of officers, when superintendent Brinkoeter was chosen president, Bergman, vice-president, and Kinley, one of Richard Friedrich's secretaries, secretary. At a meeting of the Friedrich union's executive committee, Superintendent Brinkoeter produced a proposed contract with respondent, which he told the other committeemen was satisfactory to the Friedrichs. The committee voted to adopt it. This contract assured, by means of a closed shop agreement, the continuing existence of the Friedrich union and fastened complete subservience upon that organization by its other provisions, among which were; "that the absolute right to heir, discharge, lay off, and promote employees was reserved to the company." Another clause relieved respondent from the obligation of considering seniority and stated that "the employees shall have the exclusive right to come to its determination and make selections from its employees, influenced solely by its judgment as to the respective skill and desirability of the various employees who may be affected."

The dominant purpose and intent of the labor relations act plainly expressed in it and vigorously given effect, by the decisions of all the courts, was to permit employees to form their own organizations without interference of any kind on the part of their employers.

---

[4] International Association of Machinists v. N. L. R. B., November 12, 1940, 61 S.Ct. 83, 85 L.Ed. —.

Continental Box Co., Inc. v. N. L. R. B., 5 Cir., 113 F.2d 93; Agwilines, Inc. v. N. L. R. B., 5 Cir., 87 F.2d 146; N. L. R. B. v. Brown Paper Mill Co., 5 Cir., 108 F.2d 867. When the men have so formed an organization of their own, they are entitled to bargain through it and may not be deprived of that right by pressure of affiliated organizations exerted either with or without the support of the Board. Magnolia Petroleum Co. v. N. L. R. B., 5 Cir., 112 F.2d 545; Humble Oil & Refining Company v. N. L. R. B., 5 Cir., 113 F.2d 85. To attain these ends, the act plainly and flatly prohibits interference, domination or support by the company and it is in each case for the Board to say on the whole record whether a particular organization formed or assisted by the employees, has been formed or is being assisted by them of their free choice or under the support or domination of the employer, and for the courts to say whether that determination is supported by substantial evidence.

Examining this record with that rule in view, we think it clear that formed and organized as it was and conducted as it has been, the evidence not only amply supports the findings of the Board that the union was company dominated and fostered, but indeed precludes any other reasonable inference. The Board concedes that the provision of the order forbidding respondent's taking credit for sums earned by Baranek on work relief projects and requiring such amounts to be repaid to the appropriate agencies, is invalid. The petition for the enforcement of the order, except as to this provision, is granted and an appropriate decree may be presented.