FRANCISCO CEPEDA CANALES, Petitioner, *v.* INDUSTRIAL COMMISSION OF PUERTO RICO, Respondent; CECILIA RIVAS, Intervener.

No. 461. Argued March 2, 1953.—Decided June 30, 1954.

*Francisco Cepeda Canales, pro se.* *Gregorio Lacot Salgado* and *Enrique González Velázquez* for intervener. *Aida Casañas O'Connor* for the State Insurance Fund as *amicus curiæ*.

MR. JUSTICE MARRERO delivered the opinion of the Court.

Luis Tamas Rivas lost his life in an accident while working for the Fajardo Sugar Company. After making the corresponding investigation the Manager of the State Insurance Fund decided that the accident was compensable, granting a total compensation of $3,302 to Francisco Cepeda Canales, alleged father of the deceased,[1] as sole dependent

of the latter.    He set forth in his decision that "pursuant to the provisions of § 3 of the Workmen's Accident Compensation Act . . . Francisco Cepeda Canales is hereby directed to invest the amount of the compensation either wholly or in part in the purchase of a farm and or dwelling, in the acquisition of a profitable business or in any other profitable investment . . ." and that "meanwhile he shall be paid $50 per month, chargeable to the compensation granted, for his support and retroactive to the month immediately following the date of the workman's death. . ."

Cecilia Rivas, uterine sister to the workman, objected and timely appealed to the Industrial Commission. After a lengthy hearing, the Commission decided that the only person who depended on the deceased at the time of his death was his uterine sister, and rendered a decision to that effect. Cepeda Canales moved for reconsideration thereof and when his motion was denied he appealed to this Court on a writ of review.   We issued the writ and he now insists that the Commission erred (1) in admitting in evidence depositions taken from the record of the State Insurance Fund without granting him the opportunity to face the opposing witnesses, and (2) in limiting the application of § § 142, 143 of the Civil Code, (1930 ed.) to descendants to the exclusion of legitimate ascendants.

At the hearing before the Commission the intervener herein, Cecilia Rivas, introduced as her witnesses Juan Enrique Rivas, Inés Fellicier and Dolores Canales.   She also testified.   After introducing the oral testimony her counsel stated that he wished to have separated from the record of the investigation carried out by the State Fund the sworn statements taken by one of its investigators and that once separated, he offered those statements in evidence.   The counsel of the State Fund firmly and repeatedly objected,

---

[1] We say alleged father because it appears from the evidence that Cepeda Canales was not the legitimate or natural father of Tamas Rivas, but that he had had relations with the latter's mother.

but this notwithstanding the Commission admitted that testimony in evidence. From its decision it appears that on weighing the evidence presented the Commission not only considered the oral testimony offered by appellant Cecilia Rivas, but also the testimony of Modesto Dávila Rivera, Gregorio Salgado Rodríguez and Francisco Cepeda, offered by petitioner himself, as well as the alleged testimony which had been separated. After weighing that evidence, we repeat, the Commission concluded that Cecilia Rivas was the only dependent of the deceased workman.

Cepeda Canales' fundamental contention is that by admitting in evidence the aforementioned testimony, he was deprived of his right to cross-examine the affiants and that the decision rendered was contrary to due process of law. We disagree.

■■ Pursuant to the provisions of § 37 of the Workmen's Accident Compensation Act (No. 45 of April 18, 1935, pp. 250, 320) : [2] "Information acquired by virtue of the provisions of this Act by the Industrial Commission, by the Manager of the State Fund . . . shall be considered as of a private nature . . ." but "nothing in this Section shall be construed as prohibiting the inspection by the interested party or by his attorney, of the reports and all other documents connected with this case." Availing herself of this right, appellant Cecilia Rivas prayed the Commission to order the Manager of the State Fund to allow her to inspect the record of the investigation made by him in the case. The Commission so ordered.

On the other hand, § 6 of the aforecited Act [3] contains a *Provided* clause to the effect "That the records of the investigation of cases in accordance with this Act, now in the possession of the Manager of the State Fund, shall be admit-

---

[2] The amendment introduced to that Section by Act No. 185 of May 2, 1952 (pp. 384, 388) in nowise changed the pertinent part thereof.

[3] Act No. 405 of May 11, 1951 (p. 1058) amended this Section, but the former Provided clause remains as copied above.

ted as evidence by the Industrial Commission." With such a clear and final provision, it was the duty of the Commission, when the testimony appearing in the record of the State Fund, duly disgorged and identified, were presented, to admit them in evidence. *Alemañy* v. *Industrial Commission*, 63 P.R.R. 578; *cf. Negrón* v. *Corujo*, 67 P.R.R. 371, 374. Besides, in deciding the question raised, the Commission could not overlook such testimony, instead it was its duty to consider them, which it did. If the testimony to which we have referred was taken by an investigator of the State Fund and served as a basis for the latter to reach the conclusion that the only person that depended on the deceased was Francisco Cepeda Canales, the presumption was that such testimony was adverse to appellant Cecilia Rivas. This notwithstanding, she chose to offer it in evidence in addition to the documentary evidence to which we have already referred. Such testimony, we repeat, was clearly admissible in evidence. If Cepeda Canales wanted to examine more extensively the persons who had given the testimony it would have been very easy for him to ask the Commission to summon those persons and set a day for a hearing. *Montaner* v. *Industrial Commission*, 51 P.R.R. 446. He failed to do so. He merely objected to their admissibility in evidence, because he was entitled to cross-examine those persons, offering in addition the oral testimony of the aforementioned witnesses, including his own. We do not see that the respondent Commission erred in admitting such testimony in evidence.

The second error assigned was not committed either. Sections 142 and 143 of the Civil Code, 1930 ed., define what is understood by support and who are obliged to support each other. Those Sections have nothing to do with the case at bar, not only because pursuant to the express provisions of §§ 149 and 150 of the same Code the obligation ceases with the death of the person obliged to give sup-

port or with the death of the recipient, but also because the matter involved herein is regulated by a special law. This case deals with the accidental death of a workman whose employer was insured with the State Insurance Fund. The Workmen's Accident Compensation Act is applicable to this case.

It is undeniable that the latter Act is one of dependency. It has been repeatedly so held by this Court—see *Montaner* v. *Industrial Commission*, 58 P.R.R. 269, 275; *Rodríguez* v. *Industrial Commission*, 58 P.R.R. 113, 116; *De Jesús* v. *Osorio*, 65 P.R.R. 601, 603—. See also 58 Am. Jur., pp. 684, 685, § § 161, 162.

Section 3, as amended by Act No. 284 of May 15, 1945, pp. 1036, 1048 unmistakably demonstrates this. Insofar as pertinent it provides:

*"Compensation in Case of Death*

"5.—*If, as a result of injuries or disease* suffered under the conditions specified in Section 2 of this Act, *the death of the workman or employee occurs* . . . and the workman or employee leaves no relative *who depended on him for support,* . . .

"Should the workman or employee leave a widow, parents, . . . *any of whom were wholly or partly dependent for their support on the earnings of the deceased workman or employee at the time of his death,* . . . . Said compensation shall be distributed among the aforesaid relatives according to the condition, needs, and degree of relationship *and dependence of each,* . . . .

"In default of the aforesaid persons, the foster father or mother, the foster children, or the *brothers and sisters under eighteen (18) years of age,* . . . *who were wholly or partly dependent on the earnings of the deceased workman or employee shall receive a compensation* . . . .

"In default of the abovementioned persons, the foster brothers and sisters under eighteen (18) year of age, . . . *who depended mainly on what the deceased workman or employee earned, shall receive a compensation* . . . ." (Italics ours.)

Furthermore, the Workmen's Accident Compensation Act is a special law. Pursuant to § 12 of the Civil Code "in matters which are the subject of special laws, any deficiency in

such laws shall be supplied by the provisions of this Code." In this respect, the special law governing this case does not have any deficiency whatever. It expressly provides who shall receive compensation in case of the accidental death of a workman. In so doing it always refers to persons who depend on the deceased workman or employee for their support, or that "were wholly or partly dependent for their support on the earnings of the deceased workman or employee at the time of his death," etc. Dependency is a question of fact to be determined by the trier—the Industrial Commission in first instance, in Puerto Rico—taking into consideration all the circumstances of each particular case., *Cruz* v. *Workmen's Relief Com.*, 35 P.R.R. 937, 939; Bradbury's *Workmen's Compensation*, 3rd ed., p. 747; Schneider's *Workmen's Compensation*, Permanent Ed., Vol. 9, p. 19, § 1905; *Weisgerber* v. *Workmen's Compensation*, 292 N. W. 627, 128 A.L.R. 1482, 1488; 13 A.L.R. 686; 30 A.L.R. 1253. The legal obligation to support standing alone will not establish actual dependency. *In re Konin*, 202 P.2d 239, 241; Campbell's *Workmen's Compensation*, Vol. 1, p. 777, § 878; Bradbury's *op cit.*, p. 743. The fact that pursuant to § 143, paragraph 4 of the Civil Code, parents and illegitimate children are obliged to support each other, must not, and does not, establish a presumption of dependency.

■■ The dependency to which the Workmen's Accident Compensation Act refers is a real, present relation which must exist at the time of the workman's death. Schneider's, *op cit.*, Vol. 9, pp. 5 and 11, § § 1901 and 1902. If Tamas Rivas' presumptive father did not really depend for his daily support on his son's earnings, the mere fact that once the illegitimate paternity is proved, there is the legal obligation to support, does not establish any presumption of dependency. Dependency, we repeat, is a question of fact to be determined by the trier. To prove that his presumptive father depended for his support on the deceased workman, it was not enough that the decedent occasionally sent him groceries.

In *Drouin* v. *Ellis C. Snodgrass Co.*, 23 Atl.2d 631, one Rosaire Drouin, twice married, died as a result of a labor accident. He was survived by a widow and a stepson, with both of whom he was living, and by a daughter from his first marriage. The mother of the latter died in childbirth and the girl when still an infant went to live with her paternal grandparents in Canada. The deceased employee sent his daughter occasionally small amounts of money for her support and at one time paid for the maintenance of the child for a whole year in a convent. At the accidental death of her father a claim was filed in favor of the minor. In deciding against her the Supreme Court of Maine stated:

"It is argued orally and on the brief, however, that the legal obligation of a parent to support his minor child in itself establishes statutory dependency entitling the claimant to compensation. This contention is too broad. True it is that in this jurisdiction a father is bound by law to support his minor children. [Citations.] And for failure to do so severe penalties are provided by statute. [Citations.] Dependency, however, as known to the Workmen's Compensation Laws is something different from the right to have support or the duty of a parent to render it. *In the absence of express statutory authority therefor, it is generally held that a finding of dependency cannot rest on proof alone of the relation of parent and child* but there must be some evidence of a reasonable probability and expectation that the obligation of the parent will be fulfilled and thereby have some real as well as mere theoretical value." (Italics ours.)

In this jurisdiction we have two cases where this question has been decided adversely to petitioner's contention. They are *Vázquez* v. *Workmen's Relief Com.*, 35 P.R.R. 927 and *Cruz* v. *Workmen's Relief Com.*, *supra.* In the former the claimant's son worked as watchman of a farm. While in the performance of his duties as such, the shotgun which he carried was accidentally discharged through his left side. As a result thereof he died. His father filed a claim alleging that he depended on the deceased workman for support. The evidence established that the son was earning $15 a month

and was supporting a concubine and that the statement of the father was so exaggerated that the lower court was justified in not believing it. This Court concluded that it had no doubt in respect to "the failure of the plaintiff to prove that he was reasonably dependent on his son for support."

In the second case—*Cruz v. Workmen's Relief Commission*—the claimant's son died as a result of an accident which happened while he was working as a carpenter. The Commission, after investigating the case, denied the petition on the ground that the father claimant "did not in any manner depend on what his deceased son had earned." In the opinion delivered by this Court it was stated:

"At all events, even if it be admitted that José Cruz on a certain occasion gave his father some money, that does not establish the reasonable dependency to which the law refers, inasmuch as it is not enough that Manuel Cruz merely derived some benefit from his son's salary to reach that conclusion."

■ Section 11 of the Act—Act No. 45 of 1935—as amended by Act No. 121 of May 2, 1940, p. 728, provides that:

"Any interested party may present certified copies of an order or decision of the Industrial Commission, in accordance with this Act, against which a petition for review has been filed and a decision rendered thereon, a review of which before the Supreme Court of Puerto Rico may be requested within the term of fifteen (15) days after notification thereof; *Provided, That said review may be granted only on questions of law, or upon appreciation of the evidence when such evidence is of an expert nature.*" (Italics ours.)

Taking into consideration the evidence introduced, the Commission determined the person who depended on Tamas Rivas at the time of his death and it granted the total compensation for his death to that person. Its conclusion in this respect has ample support in the evidence. Although some of the grounds set forth in its decision may have been

erroneous, its conclusion is correct and must be upheld. *Cf. Heirs of Muñoz* v. *Cepeda*, 72 P.R.R. 554, 568.

The decision appealed from will be affirmed.

---

MR. JUSTICE NEGRÓN FERNÁNDEZ, dissenting.

I cannot agree with the opinion of the Court. I shall explain my reasons for dissenting.

## I

The Court holds that §§ 142 and 143 of the Civil Code [1] —which establish what is understood by support and who are obliged to give it to each other— "have nothing to do with the case at bar, not only because pursuant to the express provisions of §§ 149 and 150 of the same Code the obligation ceases with the death of the person obliged to give support or with the death of the recipient, but also because the matter involved herein is regulated by a special law," immediately citing the following cases, *Montaner* v.

---

[1] Those Sections provide:

"Section 142.—Support is understood to be all that is indispensable for maintenance, housing, clothing and medical attention, according to the social position of the family.

"Support also includes the education and instruction of the person supported when he is a minor.

"Section 143.—The following are obliged to support each other, within the full meaning of the preceding section:

"1. Husband and wife.

"2. Legitimate ascendants and descendants.

"3. Parents and legitimatized children and the descendants of the latter.

"4. Parents and illegitimate children, and the legitimate descendants of the latter.

"5. The adopter and the person adopted, excepting the provisions of Section 136.

"Brothers and sisters also owe their legitimate brothers and sisters, even when only on the mother's or the father's side, the aid necessary to maintain their existence, when through a physical or mental defect or for any other cause not the fault of the person requiring support, the said person cannot provide for himself. With such support are included the expenses necessary for the elementary education and teaching of a profession or trade."

*Industrial Commission,* 58 P.R.R. 269, 275; *Rodríguez* v. *Industrial Commission,* 58 P.R.R. 113, 116 and *De Jesús* v. *Osorio,* 65 P.R.R. 601, 604, where we have held that this "is a law of dependents and not of heirs."

It is true that the Workmen's Compensation Act—Act No. 45 of April 18, 1935—is a law of dependents and not of heirs. But that fact, true as it is, is not an adequate answer to the second assignment of error, which we consider herein in the first place, nor does it support the statement that § § 142 and 143 of the Civil Code have nothing to do with this case. Let us see.

The right to support is not a hereditary right. The obligation to give support and the right to claim it are independent of, and are not predicated on, the rule which governs hereditary rights. The obligation to support—and the right to claim it—ends precisely with the death of the person under obligation, and therefore does not depend on the inheritance right. Consequently, the instant case does not involve any hereditary right. What it does involve is the right to compensation for dependency arising from the legal obligation of giving support, and whether that obligation is sufficient to create, under the circumstances of this case, a state of dependency sufficient to establish the right to compensation pursuant to the Workmen's Compensation Act. The latter rests that right with those persons of the different groups or categories enumerated therein, who depended wholly or partially for their support on the deceased worker at the time of his death, but it does not define dependency.

In order to be a dependent *it is not necessary* to be an heir. Neither is it *sufficient* to be an heir in order to be a dependent. Hence the explanation of the phrase—which is not a magic phrase—"this is a law of dependents and not of heirs." Likewise, for a person to be entitled to compensation, the decedent need not be under any legal obligation to support him, if as a matter of fact there existed a condition of total or partial dependency. But the existence

of such legal obligation to support, once the person's need or support is established, becomes one of the strongest indicia of a state of dependency. The better rule permits such a condition to be based on a reasonable expectation of future support, provided that at the time of the workman's death there exists the obligation to furnish support, on which the beneficiary relies. 13 A.L.R. 698, 30 A.L.R. 1259.

According to the more liberal view, it is not essential to prove actual contributions by the child in order to establish the dependency of the parent. The promise of the child, *or the implication from the relations of the parties*, may give rise to a reasonable expectation of future support just as effectively as past contributions. 58 Am. Jur., § 180, p. 696, *et seq.* And although the legal obligation to support is not by itself a fair test of dependency, it serves to strengthen a weak inference arising from small or irregular contributions. L.R.A. 1918 F 487, L.R.A. 1916 A 250. The non-fulfillment of the legal obligation does not have the effect of denying the dependency of a person entitled to receive support. *Utah Fuel Co.* v. *Industrial Commission*, 15 P. 2d 297. See also the annotation in 86 A.L.R. 858.

More than a decade and seven years ago—on August 7, 1936, to be more exact—the Industrial Commission in a very well reasoned opinion [2] progressive in social scope, decided that two minor children of a workman named Ángel Montero Campos, whom he did not support, depended on the earnings of the workman at the time of his death for their support.[3] Consequently, it named them his beneficiaries,

---

[2] *Ángel Montero Campos*, appellant, v. *Fondo del Seguro del Estado*, appellee, 1 *D.C.I.* 17.

[3] Section 3, then in force, of Act No. 45 of 1935 (Sess. Laws, p. 250), cited in the text, in its paragraph "Compensation in Case of Death" concerning the first group of persons entitled to compensation, provided:

"5. If, as a result of injuries or disease suffered under the conditions specified in Section 2 of this Act, the death of the workman or employee occurs within two (2) years from the time of the accident and as a consequence thereof, and the workman or employee leaves no relative who depended on him for support, the disbursement by reason of such

along with other dependents—among them another minor child—to whom the Manager had adjudicated the total compensation, and ordered the latter to redistribute it and to pay to the appellants—whom he had excluded from the benefits of the law—the corresponding part of the compensation granted. The spirit of justice which inspired that decision is reflected in the following words:

"Pursuant to these Sections of the Civil Code of Puerto Rico [142 and 143, 1930 ed.] Ángel Montero Campos was bound to support his legitimate children, whereby the law presumes that his minor children were depending wholly or partially for their support on the earnings of their father until the day of his death. If Ángel Montero Campos did not fulfill this duty and obligation as a father, in violation, not only of a moral duty, but of § § 142 and 143 of the Civil Code of Puerto Rico, we consider, in our opinion, that his two minor sons are not responsible for the action of their father to the extent of losing their ultimate right to receive compensation for their father's death."

This opinion, delivered by the Industrial Commission in the exercise of its quasi-judicial and quasi-tutelary functions, acting as the specialized administrative court in charge

---

death shall be limited to the payment of funeral expenses which shall not be more than one hundred (100) dollars, and such other expenses for medical attendance, hospitalization, and medicines as may have been incurred by order of the Manager.

"Should the workman or employee leave a widow, parents, legitimate or illegitimate children, posthumous children, whether or not natural or adoptive children, or grandchildren, any of whom were wholly or partly dependent for their support on the earnings of the deceased workman or employee at the time of his death, they shall receive a compensation of from one thousand (1,000) to three thousand (3,000) dollars, which shall be graduated according to the earning capacity of the deceased workman or employee and to his probabilities of life, in accordance with such rules as the Manager of the State Fund shall prepare, which rules shall have the force of law after they are approved by the Industrial Commission and by the Governor, and promulgated in accordance with law. Said compensation shall be distributed among the aforesaid relatives according to the condition, needs, and degree of relationship and dependence of each, as the Manager may decide in accordance with the facts."

of that part of the administration of the then recently approved Workmen's Accident Compensation Act—which abolished the competitive system (optional insurance with the State, with private insurance companies or mutual associations or self insurer) established by Act No. 85 of May 14, 1928, (Sess. Laws, p. 630) to turn the State into an exclusive insurer within a new system of workmen's compensations—marked, by its liberal construction of the new statute as to the concept of dependency, a step of advancement in the establishment of a correct juridical doctrine based on an undeniable social reality. The liberal criterion thus expressed by the Industrial Commission was an advance over the restrictive criterion formerly stated by this Court, when other systems prevailed, in the cases of *Vázquez* v. *Workmen's Relief Com.*, 35 P.R.R. 927 and *Cruz* v. *Workmen's Relief Com.* 35 P.R.R. 937, both under Act No. 10 of February 25, 1918, as amended by Act No. 61 of July 14, 1921.[4]

Since then § 3 of the Workmen's Accident Compensation Act—Act No. 45 of April 18, 1935—has been amended several times [5]; it was under that Act that the Industrial Commission decided the Montero Campos case, without its provisions concerning the requirement of dependency having been altered.

The liberal construction—almost contemporaneous with its enactment—that the Industrial Commission gave the new Act in the latter case as to said requirement, was known, as is to be presumed—and was not rejected—by the various

---

[1]Act No. 10 cited in the text required that the persons mentioned therein should depend "exclusively" for their support.

The amendment by Act No. 61 changed this requirement to "reasonably" dependent.

Act No. 85 of May 14, 1928, repealing Act No. 10 of 1918, as amended, required also that they be "reasonably" dependent.

[5]By Act No. 52 of May 14, 1942; by No. 284 of May 15, 1945; by No. 163 of May 2, 1950; by No. 455 of May 14, 1952 and by No. 115 of July 1, 1953.

Legislative Assemblies which subsequently amended § 3 itself in points directly connected with compensation in case of death. The respondent Commission itself, in its decision in the case at bar, leaves standing—correctly, in my opinion, see *Schroeder* v. *Arthur Sales Co.*, 62 A. 2d 751, *cf. Llewelyn* v. *Industrial Commission*, 202 P. 2d 160—the doctrine of the *Montero Campos* case, but applies in this case, with respect to the father's dependency, a rule different from the one followed in the former case, when it states:

"The Manager of the State Fund states in his brief that the Industrial Commission itself laid down a precedent with respect to the application of § § 142 and 143 of the Civil Code when it met an analogous situation. The Manager refers to the case of Ángel Montero Campos, 1 *D.C.I.*, p. 17. That is true. We remember the case perfectly well. It was one of the first cases decided under the present Act. In that case, however, there were no conflicting interests and the presumption was of father to children, that is, in that case the father of the claimants was the one who died and the appellants were minor children.

"The instant case is exactly the opposite. Here, the child was the one who died and in addition to the claimant father, his sister also claims, but she is included within the second group of beneficiaries. She would be excluded *ipso facto* if it were proved that the beneficiary is Francisco Cepeda, decedent's father." [6]

The rule applied herein by the Commission has the same basis as that attributed to the phrase, already discussed, that the Workmen's Accident Compensation Act "is a law of dependents and not of heirs," and the Manager granted the compensation to the father on the sole basis of the obliga-

---

[6] Although in the *Montero Campos* case, the fact that the Commission admitted the right of two legitimate minor children to compensation, did not totally defeat the right of the natural child—since the law permitted the concurrence of both rights—we cannot agree with the Commission that "there were no conflicting interests," since recognition of the right of the two minor children, appellants therein, impaired the right to compensation acknowledged to the natural child by the Administrator by reducing it to one third.

tion imposed on his son by § § 142 and 143 of the Civil Code without the dependency having been proven, as a question of fact, by the evidence obtained in his investigation.[7]  The Industrial Commission states the following in respect to this:

"It is well settled that notwithstanding the provisions of the Civil Code there are parents, and also children, who neglect the fulfillment of that provision which is, not only of a legal, but of a moral character as well.  And that is so, because human nature is so.  And it becomes necessary, on occasions, to appeal to the courts of justice to compel those persons who are bound to give support, to do so.  This necessarily leads us to conclude that not in every case *could it be presumed with a trace of certainty that a provision, such as the one contained in our Civil Code, is followed to the letter.*  That is why it is necessary to introduce evidence in order to determine, whether as a matter of fact, the child in the instant case, supported his father."  (Italics ours.)

*Dependent*, in a literal construction of the Act, is not, and cannot be, the person who merely receives regularly a fixed contribution from a person who works.  It is also a person who, like Cepeda Canales, in his want and physical disability, relies on the small help that his son may give him, because outside of him he has no one to turn to.  Better worded, it is one who short of being a private burden, is about to become a public burden.  And it must be borne in mind that although extreme poverty and misery are not requisites for dependency, *United States Fidelity & Guaranty Co.* v. *Britton*, 188 F. 2d 674, when—as here—they actually exist, together with the legal obligation of the son to give support and his irregular and small contributions to the father, they complete the picture of a real situation of dependency.

[7] The erroneous contention of counsel for the Manager of the State Insurance Fund before the Industrial Commission in the case of Montero Campos—which the Commission includes verbatim in the decision reviewed herein—does not represent a dogmatic and permanent criterion, nor may he imprison his criterion as to the juridical scope of a provision, in a perpetual intellectual stasia, in the face of laws of a social remedial nature and realistic standards of statutory construction.

In the interpretation of laws it must be borne in mind that "a word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used." Justice Holmes in *Towne* v. *Eisner*, 245 U. S. 418, 425, 62 L. Ed. 372, 376; *Cordero, Auditor* v. *District Court*, 72 P.R.R. 354, 364. To tie oneself, as if they were magic words, to the phrase that the Workmen's Accident Compensation Act "is a law of dependents and not of heirs," is to lose track of the origin and purpose of such statutes and their function by substituting ordinary actions based on fault or negligence.

Although the action herein is not one for damages it is convenient to point out the rule set forth in *Travieso* v. *Del Toro*, 74 P.R.R. 940 concerning the right of a father to be awarded damages for neglect of support:

"The original source for a claim for damages for death is § 1802 of our Civil Code, and not Rule 17(k) or § 61 of the Code of Civil Procedure. *Orta* v. *Porto Rico Railway, Lt. & P. Co.*, 36 P.R.R. 668. In order that a claimant may have a valid cause of action for said reason, technically he need not be an heir, it being enough if he is the father of the victim (Judgment of the Supreme Court of Spain of December 20, 1930) and that he has suffered damages due to his condition and relation as parent, considering the destruction of his actual or potential right to receive support and the permanent suspension of the prospective benefits that he might have received from his son. *Cf. Ruberté* v. *American R. R.*, 52 P.R.R. 457; *López* v. *Rexach*, 58 P.R.R. 145; *Díaz* v. *Water Resources Authority*, 71 P.R.R. 872."

Our Workmen's Accident Compensation Act, following the scope and philosophy of this type of legislation, on the one hand, established the right to compensation without considering the fault or negligence of the employer, and on the other hand, abolished the private right of action for damages by the workman—and his beneficiaries in case of death—against the insured employers. *Mountain Timber Co.* v.

*Washington*, 243 U. S. 219, 61 L. Ed. 685; *New York C. R. Co.* v. *White*, 243 U. S. 188, 61 L. Ed. 667; *Cudahy Packing Co.* v. *Parramore*, 263 U. S. 418, 68 L. Ed. 366, 30 A.L.R. 532; *Rivera* v. *Industrial Commission*, 67 P.R.R. 526; *De Jesús* v. *Osorio, supra; E. H. Noel Coal Co.* v. *Grilc*, 221 S. W. 2d 49. It should be liberally construed to achieve the intent of the Legislature. *Montaner* v. *Industrial Commission*, 54 P.R.R. 741; *Correa* v. *Industrial Commission*, 56 P.R.R. 783; *Cordero* v. *Industrial Commission*, 60 P.R.R. 854; *Cordero* v. *Industrial Commission*, 61 P.R.R. 349; *Atiles* v. *Industrial Commission*, 69 P.R.R. 586. See Horowitz, *Current Trends in Workmen's Compensation*, p. 470. The opinion of the Court means that if Cecilia Rivas would not have existed, Cepeda Canales would not have been entitled to any compensation whatever. Under the circumstances which I have previously set forth, he was so entitled, and we should not be influenced by the fact, present in this case, that Cecilia Rivas also depended on the deceased workman, and that because of her father's dependency, she was excluded from any compensation whatever by law.

The law should be given a human feeling. The blood ties create ineludible duties of conscience and of spirit which the legislature has recognized and sanctioned as legal obligations. A father always remains a father. The words of Justice Douglas in his dissenting opinion in *Baumet* v. *United States*, 344 U. S. 82, 97 L. ed. 111, express with fine eloquence the infinite grandeur at the bottom of the filial relations: "No law, no dictionary, no form of words can change that biological fact. The natural father, as well as the natural mother, remains a parent no matter how estranged parent and child may become. A stranger may by conduct become a foster parent; but no conduct can transmute a natural parent into a stranger."

Since there exists here the legal obligation of the son towards his father—a 70 year old invalid—and since his

need for support has been established not only by his condition of human wreckage, but also by the deficient investigation of the Fund which showed the existence of small and irregular contributions by the son, the declaration of dependency in his favor by the Manager was justified. And, if we consider in addition, the evidence that the Industrial Commission had before it on the day of the hearing, we can but affirm that the respondent Commission committed manifest error in depriving the father of the deceased workman of his compensation, to give it to the workman's uterine sister for whom the latter had no legal obligation of support, since according to the record she did not meet the requirement of § 143 which give rise to support, and whose dependency, even if real, could not defeat the right of the father to compensation, a superior and preferred right by express provision of law.

## II

It is my opinion also that at the hearing before the Industrial Commission, petitioner was deprived, to his prejudice, of substantial rights that call for the reversal of the decision appealed from.

It is definitively recognized that in proceedings before administrative bodies such as the Industrial Commission, where the adjudication of facts is final, the right to cross-examine witnesses forms part of due process of law. Parker, *Administrative Law* (1952) p. 56. See also *Rilley* v. *Pinkus*, 338 U. S. 269; *Meunier's Case*, 319 Mass. 421, 66 N. E. 2d 199. Sworn statements or written testimony, taken without the intervention of the party against whom they are sought to be presented, are inadmissible in evidence in proceedings before such a body, since to admit them would be to deprive that party of the opportunity to cross-examine. See *In the Matter of Blumberg*, Park and Fisher, Admin. Law, 45d. 811–7 (O.P.A., 1944); *Bereda Mfg. Co.* v. *Industrial Board of Ill.*, 114 N. E. 275. The right to cross-

examine is a substantial part of the guaranty of a fair trial and it is believed that this right cannot be directly defeated by permitting a witness to put his testimony in writing, in lieu of calling him to the stand. Cooper, *Administrative Agencies and the Courts* (1951) p. 171 *et seq.* See *Bereda Mfg. Co.* v. *Industrial Board of Ill., supra.* Cf. *Morgan* v. *United States*, 304 U. S. 1, 82 L. Ed. 1129; *Ohio Bell Telephone Co.* v. *Public Utility Comm.* of Ohio, 301 U. S. 292, 81 L. Ed. 1093. If the declaration has importance and weight in the decision or adjudication of the matter, to prohibit cross-examination may amount to a denial of a fair hearing. Cooper *op. cit.*, p. 184. The Industrial Commission is an administrative tribunal whose function is quasi-judicial. While such an administrative tribunal is not bound by technical rules of evidence, it must determine the substantial rights of the parties from competent evidence and while hearsay testimonies may be received without necessarily resulting in reversal, see *NLRB* v. *Ed. Friedrich, Inc.*, 116 F. 2d 888; *Co. Mexicana de Gas S. A.* v. *Federal Power Commission*, 167 F. 2d 804, it cannot constitute the basis of a determination. *Borgia* v. *Board of Review Etc.*, (N. J. App. 1952) 91 A. 2d 441. The *hearing* by the Commission as a quasi-judicial body has reference to the tradition of judicial proceedings: a fair trial where the evidence is received and weighed by the trier of the facts, and the issue determined uninfluenced by extraneous considerations which might not be exceptionable in other fields involving purely executive action. *Borgia* v. *Board of Review, Etc., supra.*

The opinion of the Court places emphasis on the provisions of § 6 of the Workmen's Compensation Act to the effect that "the records of the investigation of cases . . . shall be admitted as evidence by the Industrial Commission," and on the cases of *Montaner* v. *Commission*, 51 P.R.R. 446 and *Alemañy* v. *Industrial Commission*, 63 P.R.R. 578. (The case of *Negrón* v. *Corujo*, 67 P.R.R. 371, is cited

with *cf.*)   None of these cases is against the point of view which I support.   In my opinion the meaning of the provision above referred to is the following:

(1)  In those cases where the issue before the Industrial Commission is between the workman or his beneficiaries and the Manager of the Fund, or between the employer and the Manager, the records of the investigations carried out by the Manager himself may be admitted in evidence by the Industrial Commission.   The Manager, through his investigators, has had the opportunity of examining the persons with whose declarations he makes the record of investigation.   With this evidence he forms an administrative judgment and makes his own decision.   It is not a trial or hearing, but merely an ex parte investigation.   Consequently, the records may be admitted in evidence when they are offered by the party in controversy with the Manager, but not by the latter against the former, since the party would be deprived of his opportunity to cross-examine.   However, since the records of investigation have, besides the testimony, other documents obtained by the Manager in the ordinary course of his functions, these may be admitted in evidence when offered by the Manager.

(2)  When, as in the case at bar, the issue is brought before the Commission by two really interested parties, neither being the State Insurance Fund, nor taking part in the investigation, § 6 does not authorize the admission of declarations against the party who may be aggrieved thereby, if not conditioned by the opportunity for cross-examination.   It is a well-settled rule that the opposing rights and claims of different beneficiaries among themselves, are considered separate and independent of the rights of the insurer.   *Weisgerber* v. *Workmen's Compensation Bureau*, 292 N. W. 627, 128 A.L.R. 1482.   Therefore, since the Manager had declared the case compensable and had adjudicated the compensation to the father, Cecilia Rivas' appeal from

the decision had no other purpose than to contest, nor could it have any other juridical consequence than to defeat, the right acknowledged to the father by the Manager. The compensable nature of the accident could never be altered. The controversy, therefore, was between Cecilia Rivas and Cepeda Canales. The Manager was not a party in the proceeding. *Montaner* v. *Industrial Commission*, 50 P.R.R. 668. The Fund's position was established by its counsel when he stated "it makes no difference to the State Fund whether one or the other person is" the beneficiary. Cepeda was the only party who could be adversely affected by a reversal of the Manager's decision. Therefore, Cepeda Canales' rights, already acknowledged administratively when he was adjudicated the compensation, and not the interests of the State Insurance Fund, might have been impaired.

The unnecessary vehemence—and undue resistance—repeatedly exhibited by the counsel for the Manager in mistakenly holding that notwithstanding the Commission's order, the Manager was not bound to permit the inspection of the record of the investigation of the case—see § 37 of the law—undoubtedly misled the competent and upright Commissioner presiding at the hearing, for he evidently considered the Manager as an interested party in the proceeding, stating on repeated occasions "Here the State Fund is a very special party," at the same time that the counsel for the Manager, without the legal representation, nor the authority to assume it, became the counsel for Cepeda Canales. Undoubtedly, it was due to the prolonged and exasperating discussions of the counsel for the Fund with the patient Commissioner that the latter forgot, in the exercise of his quasi-judicial function, the preeminent quasi-tutelary function vested on him by the statute, by virtue of which not only Cecilia Rivas was entitled to the protection of her substantive and procedural rights, but Cepeda Canales as well,

with the same or better right. The Commissioner stated the following: ". . . These are witnesses which we might say are witnesses for the State Fund, because the Fund availed itself of them upon taking their declarations in order to render the decision in this case. *It could hardly be stated that the State Fund would have now to cross-examine those persons, inasmuch as cross-examination is the weapon for the opposing party* and not for the party using the witness upon direct examination." (Italics ours.) Further on he states: "The situation would differ. It could not be the same. In that case, if those sworn statements were taken by the State Fund, and they appear in the record, *the other party had no opportunity of examining those witnesses and still less of cross-examining them.*" (Italics ours.) Undoubtedly those words were likewise, but improperly, applied to Cepeda Canales, who did not examine or cross-examine the witnesses in the investigation of the Fund.

The Manager, through his counsel, could not assume to represent, nor could they, by their conduct or professional office, bind Cepeda. It was the latter's right and not the Fund's that was before the Commission. There is nothing in the record showing that the Commission in the exercise of its quasi-tutelary function, offered to Cepeda, who was not legally represented, an opportunity to examine personally the witnesses who testified before it or those who had testified in the investigation of the Manager.

The purpose of the testimony offered in evidence as stated by the counsel of Cecilia Rivas was to establish "the non-dependency" of Cepeda. In that manner and for that purpose those declarations were not admissible and could not prejudice Cepeda. He was entitled to cross-examine the declarant, a right of which he was deprived.

To disturb, to Cepeda's disadvantage, his right to compensation already acknowledged administratively, by the admission of *ex parte* testimony, without giving him the

opportunity for cross-examination, is to carry too far the doctrine of informality in proceedings before administrative bodies, above all, when quasi-judicial functions are exercised therein and the findings as to the facts are not reviewable by this Court. Cepeda having been deprived of his opportunity to cross-examine it was evident that he was entitled to have the direct examination stricken—and that the Commission was under the obligation to order it in the exercise of its quasi-tutelary function. Morgan, *Hearsay Dangers and the Application of the Hearsay Concept*, 62 Harv. L. Rev. 177, 184 *et seq.* Failure to do so was an error.

The natural implication of the provision of law which establishes that "the records of the investigation of cases ... shall be admitted in evidence by the Industrial Commission" is necessarily that such records are admissible insofar as the *ex parte* declarations therein do not tend to aggrieve a third party who is not the party taking them, above all when such a party is adversely affected in his substantial rights, unless he is offered the effective opportunity for cross-examination. To disregard the natural implication of the statute is to shut our eyes to the real function of the law, and "to imprison our reading of it in the shell of the mere words is to commit the cardinal sin in statutory construction, blind literalness." *Pope* v. *Atlantic Coastline Railroad Co.*, 345 U. S. 379, 392, 97 L. Ed. 1094, dissenting opinion of Justice Frankfurter.

---

Mr. Justice Ortiz, concurring.

I agree with the opinion of this Court, but I deem it appropriate to add a few words. In my judgment, the majority opinion is justified by the specific and clear provisions of the Workmen's Accident Compensation Act, which should exclusively govern this situation.

In *Travieso* v. *Del Toro*, decided May 29, 1953, in which I wrote the opinion for the Court, we decided in part that under § 143 of our Civil Code, the father is entitled to support

and has in his favor a cause of action for his son's death since, even if he was not actually and effectively receiving support at the time of his son's death, he lost the prospective and potential benefits inherent in the parent and child relation, and since the relation itself gave rise to a reasonable expectancy of support and future benefits. That doctrine is valid and effective in the field of application of the Civil Code, which structures the right of support on the ground of the juridical nexus of kinship, (1 Manresa 671, 6th ed.) which gives rise to an obligation to support. Manresa, p. 685. However, the Workmen's Accident Compensation Act is a special law and only those persons who are subject to the dependency conditions expressly stated in the Act are beneficiaries. Schneider, *Workmen's Compensation*, Vol. 9, p. 2, Permanent Edition; *Brown* v. *Martin*, 26 S. E. 2d 317. Although the Workmen's Compensation Act should be liberally construed, to the end that its benefits may not be denied upon technical, narrow and strict interpretations, yet its language should be given the established legal meaning or the meaning which the Legislature intended, and may not be so construed as to do violence to a specific requirement of the Act. *Brown* v. *Martin, supra.*

The problem at issue should be decided exclusively on the basis of § 3 of the Act as amended by Act No. 284 of May 15, 1945. (Sess. Laws, p. 1036).

The Section in question grants a right to compensation, among others to parents who "were wholly or partly dependent for their support on the earnings of the deceased workman . . . at the time of his death." Clearly, the right to compensation is not granted on the sole basis of the claimant's paternity, that is, it does not arise merely because of kinship, as is the case under the Civil Code, nor is the right dependent on a presumptive right to support. It is a case of dependency in fact, and not of law, in view of the following considerations:

(1) The phrase "wholly or partially dependent" implies the need of an actual situation of fact, since the two alternatives pointed out are total dependency for his support, that is, that all the necessary expenses for the support of the father were furnished by the son, and partial dependency for his support, that is, that a part of the expenses for support were actually furnished by the son. Partial dependency does not arise from, nor is identified with, a presumptive potential and intangible right to support; which right is whole and may not be partly fragmented.

(2) Dependency of a person on another for support is a reality and not a state of law. It is a fact and not a juridical relation.

(3) "Dependent for their support on the earnings of the deceased workman or employee at the time of his death." Dependency and support are based on specific sums or amounts earned by the son, as a question of fact, at the time of his death. That is, it is essential that the father depended totally or partially on the actual earnings of the son at his death. If the son was physically disabled or an invalid at his death, to the extent that, as a matter of fact, he earned nothing, there could be no dependency. A mere expectancy of future benefits would not be enough. Whether or not the son earned money is a question of fact. The statute is not predicated either on potentialities, expectancies, nor on juridical nexus or on rights and obligations. The statute is saturated with demands of reality. Paternity is a *sine qua non* requirement but it is obviously not the only requirement, since it is further required that the father, besides being such, be dependent on his son's earnings for his support. If it were sought to establish the opposite criterion, § 3 of the Act would have been limited to granting the right of compensation to the parents, without any requirement or qualification. The theory adverse to the opinion of this Court is predicated on the concept that the

fact itself of paternity is sufficient to give rise to the right of compensation, since a presumption of dependency would arise from such paternity, being based on a potential right to support. If this were so, the Legislature would have confined itself to requiring the condition of paternity. The latter theory implies that the phrase "wholly or partly dependent for their support on the earnings of the deceased workman or employee at the time of his death" is a useless, academic, meaningless phrase since the relation of parent and child would be enough to warrant compensation.

From § 3 it clearly appears that the condition of paternity is not sufficient and that as a matter of fact dependency is also required. This Section further provides that compensation shall be distributed "among the aforesaid relatives according to the condition, needs, *and degree of relationship and dependence* of each, as the Manager may decide in accordance with the facts." (Italics ours.) The following considerations arise therefrom:

(1) The degree of relationship is not the only factor involved. The requirement of dependency is specifically added to that of the degree of relationship. That is, the degree of relationship, as a juridical bond giving rise to rights and obligations is not an exclusive test of dependency. Dependency is also required as a different and independent factor from the degree of relationship. The degree of relationship is different from dependency as a question of fact.

(2) It is indicated that among other factors the distribution of compensation is a function of the degree of relationship and dependency, in accordance with the facts. That is, that dependency, among other factors, is a question of fact since its extent and scope must be decided in accordance with the facts.

In my opinion, § 3 sets forth with meridian clearness that dependency is a question of fact. Naturally, there may be presumptions as to questions of fact. But the Industrial

Commission made a finding to the effect that the father was a dependent. There was a conflict in the evidence before the Commission on that question and the Commission decided the conflict and made a finding on the basis of the evidence introduced before it. It is a well-settled rule that the findings of fact of the Industrial Commission shall not be disturbed by this Court if they are supported by the evidence. A presumption is not sufficient to defeat a finding of fact.