**UNITED STATES FIDELITY & GUARAN-
TY CO. v. BRITTON.**

No. 10624.

United States Court of Appeals
District of Columbia Circuit.

Argued Dec. 4, 1950.

Decided April 5, 1951.

J. Harry Welch, Washington, D. C., with whom H. Mason Welch, John R. Daily, and J. Joseph Barse, Washington, D. C., were on the brief, for appellant.

Ward E. Boote, Washington, D. C., with whom Herbert P. Miller, George Morris Fay and Joseph M. Howard, Washington, D. C., were on the brief, for appellee Britton.

Joseph C. McGarraghy and George Reber Littlehales, Washington, D. C., entered appearances for appellees Elizabeth Hood Jones and others.

Before CLARK and PROCTOR, Circuit Judges, and KIMBROUGH STONE, Circuit Judge, retired (sitting by designation).

STONE, Circuit Judge.

Appellant is the insurance carrier for William J. Nicholas, t/a Williams' Waste Oil Service, Inc., under the "Longshoremen's and Harbor Workers' Compensation Act" of March 4, 1927, 33 U.S.C.A. § 901 et seq., as made applicable to the District of Columbia, Act of May 17, 1928, 45 Stat. 600, D.C.Code, 36–501 (1940), 33 U.S.C.A. § 901 note. While the insurance was in effect, Ivor Jones, an employee of insured, was killed in the course of such employment. A Deputy Commissioner awarded compensation to his mother, a minor sister, and a minor brother. The District Court upheld the award in an action by appellant to enjoin enforcement thereof.

While argued from various angles, the only issue is whether the evidence justifies a determination that this mother, sister and brother are dependents within the intent of the Act. The requirement of the

Act goes beyond mere receipt of benefits. Bare benefits may result from gifts or from payments for isolated, particular purposes. For dependency, within the Act, there must be a legal or a voluntarily created status where the contributions are made for the purpose and have the result of maintaining or helping to maintain the dependent in his customary standard of living. It is by this measure, we must determine dependency here.

 Neither this nor the trial court is a trier of facts. O'Leary v. Brown-Pacific-Maxon, Inc., 1951, 340 U.S. 504, 71 S.Ct. 470; Cardillo v. Liberty Mutual Ins. Co., 330 U.S. 469, 477, 67 S.Ct. 801, 91 L.Ed. 1028; Norton v. Warner Co., 321 U.S. 565, 568, 64 S.Ct. 747, 88 L.Ed. 430; South Chicago Coal & Dock Co. v. Bassett, 309 U.S. 251, 257, 60 S.Ct. 544, 84 L.Ed. 732. Dependency, within the Act, is a matter of fact. Ottenstein v. Britton, 82 U.S.App. D.C. 10, 160 F.2d 253. Our duty is confined to determining a question of law: Was there no substantial evidence to sustain the partial dependency of these three beneficiaries of the award? Since we do not weigh conflicting evidence, nor opposed inferences, both of which the trier of fact must resolve, we confine our statement of the evidence to that most favorable to the award.

 Ivor had never married and was twenty-one years old. At the time of his death, September 4, 1948, and theretofore, except when he was in the Navy, he had lived at home. The family consisted of his parents, a sister (Janet Hood) and two brothers (William and George). Ivor was the oldest child, the others being minors at the time of his death, although George has since reached his majority.

For several years, the family lived in a large, rented house at 2150 Florida Avenue, N. W. in Washington. About Easter, 1948, the owner gave notice to vacate. Up to that time, four rooms had been let to roomers who took meals elsewhere. By June, 1948, all of the roomers had moved except one, who remained until the Jones family moved out. After the notice to vacate, various attempts were made to secure a house. The result was the purchase of a house at 1411 Buchanan Street in August, for $16,950.00 —$3,000.00 down and $60.00 a week (covering principal, interest, taxes, etc.). This was the status at the time Ivor died. The move was made to this house a few days afterwards. This shift in residence caused changes in the family financial plan which need notice here.

*Up to the notice to vacate,* the family income came from the sources following. Payments from the roomers were about one hundred and thirty dollars a month. Otherwise, the family income came from earnings of the father, of Ivor and of George. The father (Lloyd) was employed at a daily wage which averaged ninety dollars a week.[1] Ivor first contributed to the family while he was in the Navy for twenty-one months ending in 1946. He listed no one as a dependent—leaving that space blank—but he sent twenty-five dollars a month from his pay, to be spent for furniture for the home.[2] After his discharge, his first employment (July, 1947) was at twenty-five dollars a week of which he contributed about fifteen dollars to the family expenses. This continued until February 13, 1948 when he was employed by Nicholas as a truck driver at a daily wage of twelve dollars. His weekly earnings increased from twenty-five dollars (his first week) up to sixty dollars and fifty cents (the seventh week). George was earning twenty-nine or thirty dollars a week from which he contributed about twenty dollars. The father and sons turned their earnings over to the mother, retaining or being given by her what they wished for clothing and spending money.

*After the notice to vacate,* the roomers left, except one, who paid $40.00 a month. The earnings of the father and George remained the same. Those of Ivor maintained an average higher level, ranging between $60.00 and $72.00 weekly during

---

1. All wage payments stated in this opinion are gross before Social Security or other deductions.

2. The balance he spent during service and on a trip he took following his discharge.

July and August. For six weeks before the death of Ivor, the mother worked at a cafeteria, earning $37.50 a week, with two free meals daily. She never before worked for wages.

Up to the consideration of the purchase of the Buchanan Street residence, the contributions to the family support by the father, mother, Ivor and George went into a common fund from which all household expenses and rent were paid. There was no separate allotment of particular expenses to individual contributors. The father was apprehensive that he could not undertake this purchase. Ivor agreed to help all he could. The family was considering returning to Pennsylvania—the earlier home—because of difficulty in finding a place to live. Upon the assurance of Nicholas that the employment of the father and Ivor was secure, and his consent to sign the purchase loan note, the purchase was made. The down payment was borrowed. In connection with the purchase the family plan was for the father to take care of the weekly payments of $60.00, and for Ivor to provide for the table. While this plan never became operative as to Ivor, because he was killed a few days before the family occupied the Buchanan place, yet the purchase was completed and the obligations in connection therewith were assumed before his death. This bears directly upon the situation of dependency at the time of his death.

There is no suggestion of extravagance by any member of this family. The need for all of these contributions for the support of the family is pathetically established by the fact that Nicholas loaned the father $400.00 for funeral expenses of Ivor, although the Government paid social security benefits of $181.00, burial benefits of $105.50 and furnished a headstone. Also, the family has been kept going, since the death of Ivor, only by increased earnings of George,[3] by the labor of the mother, when she was able to work, and by help from a brother of the father.

There is one matter which could be passed by since the fact involved therein is the subject of conflicting evidence. We notice it because able counsel for appellant have urged it with emphasis. It is their contention that the payments of Ivor were not dependency contributions but were payments for rent and board. As Ivor was of age, he was under no legal obligation to contribute to the support of his mother, or minor sister and brother. He could assume that obligation voluntarily, and if such a situation existed at the time of his death and his contributions were reasonably necessary to maintain those persons in their usual standard of life, then they would be dependents within the Act. On the other hand, he might pay for room and board in the house of his parents under circumstances which would contradict dependency in the sense of the Act. Here, the evidence—if we had to determine its weight—is clearly in favor of dependency. While the mother answered affirmatively questions as to whether Ivor's payments were not for room and board, yet she testified—as did the father—that there was never any talk as to any definite amount, but that Ivor turned over to her weekly his entire earnings less what he needed, at the time, for clothes and personal expenses; that these sums were intended to be and were used for the family expenses; and that no accounting was expected from or made by her.

The determination of the Deputy Commissioner of partial dependency of the mother, of the minor sister, Janet Hood, and of the minor brother, William, is supported by the evidence. The dismissal of this injunction proceeding is

Affirmed.[4]

---

3. George was employed by Nicholas about two months after the death of Ivor at a daily wage of $11.00—his average weekly earnings are not stated.

4. While each case must depend upon its own fact situation, yet it is not out of place to call attention to Pocahontas Fuel Co. v. Monahan, 1 Cir., 41 F.2d 48, which has some fact elements similar to this case.