**Ollie M. HOWELL, Appellant,**

v.

**Charles EINBINDER, Deputy Commissioner, Bureau of Employees' Compensation, U. S. Department of Labor, et al., Appellees.**

**No. 19086.**

United States Court of Appeals District of Columbia Circuit.

Argued June 2, 1965.

Decided Aug. 6, 1965.

Mr. Martin E. Gerel, Washington, D. C., for appellant. Joseph H. Koonz, Jr., Washington, D. C., also entered an appearance for appellant.

Mr. George M. Lilly, Atty., Dept. of Labor, of the bar of the Supreme Court of North Carolina *pro hac vice,* by special leave of court, with whom Messrs. David C. Acheson, U. S. Atty., Charles Donahue, Sol., Dept. of Labor, Charles T. Duncan, Principal Asst. U. S. Atty., Frank Q. Nebeker, Asst. U. S. Atty., and Alfred H. Myers, Atty., Dept. of Labor, were on the brief, for appellee, Einbinder.

28.  Royall v. Yudelevit, *supra* note 26.

Mr. William J. Donnelly, Jr., Washington, D. C., with whom Messrs. Richard W. Galiher, William E. Stewart, Jr., and William H. Clarke, Washington, D. C., were on the brief, for appellee, Insurance Co. of North America.

Before BAZELON, Chief Judge, and FAHY and LEVENTHAL, Circuit Judges.

FAHY, Circuit Judge.

This is an appeal from an order of the District Court granting summary judgment for appellee, Deputy Commissioner, in the suit of the surviving wife and children of John Robert Howell. As a consequence of his death and the illness which preceded it, they had filed a claim for death benefits, compensation for temporary total disability and medical expenses under the Longshoremen's and Harbor Workers' Compensation Act, 44 Stat. 1424, as amended, 33 U.S.C. § 901, as extended to this jurisdiction, 36 D.C.Code § 501. Upon rejection of the claim by the Deputy Commissioner they sued in the District Court, which heard the case on the administrative record, to set aside the rejection.

Decedent was a journeyman carpet mechanic employed by DuPont Carpet Services, Inc., whose carrier under the Compensation Act was Insurance Company of North America. The immediate cause of the employee's death was a cerebral edema due to post-operative craniotomy due to an intracranial aneurysm. Although he was unaware of just what had occurred, this brain aneurysm had ruptured while decedent was at his home the evening of June 13, 1962, after having completed his working day. June 13th was a Wednesday. He remained away from work Thursday and Friday, the 14th and 15th, because of headache. He returned to work Saturday, the 16th. On that day he worked at his trade, laying a carpet. This put him under considerable strain, especially in stretching the carpet by what is referred to as "kicking." The employee on his knees "kicks" with one knee a device which stretches the carpet as it is being laid before it is nailed or tacked down. Decedent's employer characterized this as "hard work." During his last day of work, the 16th, the decedent took aspirins and complained of headaches. The following day was Sunday. On Monday, the 18th, he was unable to work at all due to headaches. He entered the hospital that evening. He was operated upon a few days later and died June 29.

■ The Deputy Commissioner concluded that the death did not arise out of or in the course of the employment.[1] This conclusion necessarily required rejection not only of the claim that the rupture of June 13 arose out of or in the course of the employment but also required a finding that the work on the 16th did not aggravate the condition disclosed by the rupture on the 13th; for the statute, 33 U.S.C. § 902, defines injury as "accidental injury or death arising out of and in the course of employment," and it is settled that aggravation of an injury constitutes accidental injury compensable under the Act. Friend v. Britton, 95 U.S.App.D.C. 139, 220 F.2d 820, and cases there cited.

The position of the Deputy Commissioner is illustrated by his finding:

the death of the employee was due to the natural course of his illness, that is, the spontaneous rupture of a congenital intracranial aneurysm and it was in no way related to his work or aggravated, precipitated or made worse by the work he performed either on June 13, 1962, or on June 16, 1962 * * *.

■■ We recognize the rule, pressed upon us, that the findings of the Deputy Commissioner when supported by substantial evidence on the record considered as a whole bind the courts. O'Leary v. Brown-Pacific-Maxon, 340 U.S. 504, 71 S.Ct. 470, 95 L.Ed. 483; and see Cardillo v. Liberty Mutual Ins. Co., 330 U.S. 469,

---

1. He also concluded that any disability suffered by the decedent during the time preceding his death due to the ruptured aneurysm and the need for medical expenses were not related to his employment.

67 S.Ct. 801, 91 L.Ed. 1028. But we do not understand this to require acceptance of an ultimate finding or inference if the decision discloses that it was reached in a manner which cannot be accepted as valid. Moreover, the substantial evidence rule must be applied with regard also for the rule that "[d]oubts, including the factual, are to be resolved in favor of the employee or his dependent family." Friend v. Britton, *supra,* 95 U.S.App.D.C. at 141, 220 F.2d at 821.

■ It is to be observed that the Deputy Commissioner, apparently deeming it important to do so, made a number of findings to the effect that decedent did not complain that his work was "too hard for him," made "no report of any headache or any difficulty with his head as a result of the work he performed on June 13," though he took aspirins on the 16th for a "slight" headache he went on with his work "without any complaint that the work aggravated or made worse any difficulty he had with his head," [2] "did not look any different at the end of the day's work on June 16," that he "made no report to the physicians and the personnel at the hospital * * * that his headache or any difficulty with his head was related to his work * * * or that the conditions of his work on either day [the 13th or 16th] precipitated, aggravated, or worsened any difficulty he may have experienced with his head," et cetera. The reliance by the Deputy Commissioner upon these findings as bearing upon the relation of an undiagnosed rupture of a brain aneurysm to the employment, and thus to negate that the work on the 16th aggravated the condition, especially when it is remembered that because of his physical condition decedent had remained away from work two days after the rupture on the 13th, casts grave doubt upon the substantiality of the evidence on the record as a whole to support the ultimate

inference of non-aggravation. These findings are a completely inadequate and insubstantial basis for such inference.

The foregoing difficulty is not cured by the medical evidence; for the claim was not rejected on the basis of that evidence alone. We turn, however, to the medical evidence and find that it too poses a difficulty in accepting the decision of the Deputy Commissioner in this case.

Dr. John P. Gallagher performed the operation. He is the only medical witness who examined decedent after the rupture of the 13th. He testified there was renewed bleeding of the aneurysm and said, "I don't think there's any reasonable question that this [renewed leakage of the aneurysm] was causally related to a stress and strain involving his work on Saturday the [16th] of June 1962." He said further that the "stress and strain of moving this carpet along with this stretcher * * * caused an increase in the stress and strain on the walls of the aneurysm as a consequent rupture," and that the work on the 16th produced additional stress and strain on an already weakened aneurysmal wall, which led to hospitalization on Monday, the 18th, followed by the operation.

Dr. Richard T. Sullivan, however, who had examined the hospital and autopsy records, testified that there "is nothing in the case to suggest a new incident or added trauma from the work of the 16th", and that the aneurysm continued from the 13th in its natural course until the deceased was hospitalized. Similar testimony was given by Dr. Rizzoli and Dr. Hayes, who also testified only from records. It was their opinion the aneurysm progressed naturally, unaffected by decedent's work, and they had no basis for finding a second bleeding. In this they were contradicted by Dr. Gallagher, who testified he thought there was not the faintest doubt decedent had renewed

---

2. This was flatly contrary to his wife's testimony. She testified that he told her at the end of the day that "every time he stooped over at the job or used the kicker, it felt like the top of his head was coming off." The evidence as a whole

seems to leave no doubt that decedent, who remained away from work on the 14th and 15th, was suffering after the rupture on the 13th and until he entered the hospital upon his own volition on the 18th.

bleeding probably the night of the 16th, as a result of the stress and strain of that day's work. He went into considerable technical detail to support his opinion. To a significant extent this detail appears in his testimony on recall, which was not rebutted by the other medical witnesses.

Dr. Hayes, notwithstanding his opinion noted above, testified, "I would be willing to say that the majority of neurosurgeons in this community feel" that physical strain can induce an aneurysm to rupture. And he also testified he would not let a patient with a ruptured aneurysm go to work, because he would have him in the hospital preparing him for surgery. Both Dr. Sullivan and Dr. Rizzoli testified to substantially the same effect.

The Deputy Commissioner made no findings with respect to the testimony of physical stress and strain due to the work on the 16th or with respect to the absence of hospitalization and rest extending from the 13th through the 16th, as these circumstances bear upon the question of aggravation of the injury suffered on the 13th. All that was stated in the Findings of Fact in these respects was an abrupt, conclusory statement that the testimony of Doctors Sullivan, Rizzoli and Hayes "was the more reliable and convincing." Moreover, the dispute in the medical testimony as to possible further bleeding, due to the work on the 16th, was not the subject of findings which this court can look to in resolving the question whether the present decision has been reached by the Deputy Commissioner with the support of substantial evidence considering the record as a whole. And when we consider the importance the Deputy Commissioner appears to have accorded the numerous findings of absence of specific complaint by decedent and his wife that his condition was related to his work, when neither knew what his condition was, we must conclude that the decision of the Deputy Commissioner was influenced by these inconsequential matters. Finally, the wording of the decision suggests that the Deputy Commissioner did not take into consideration the presumptions favorable to the employee or his dependents.

The features of the decision to which we have referred, while not leading us to direct an award of benefits to appellants, compare Friend v. Britton, *supra*, do require that the order upon appeal be reversed, with directions that the decision of the Deputy Commissioner be set aside and the case remanded to the Deputy Commissioner for reconsideration, without prejudice to the reception of additional evidence if deemed desirable.

It is so ordered.