Mary R. WHEATLEY, Appellant,

v.

Herman ADLER, Deputy Commissioner, United States Department of Labor Bureau of Employees' Compensation, et al., Appellees.

No. 20455.

United States Court of Appeals District of Columbia Circuit.

Argued Jan. 17, 1968.

Decided May 17, 1968.

3. 371 F.2d 413 (7th Cir. 1966).

Mr. Karl G. Feissner, Hyattsville, Md., for appellant.

Mr. George M. Lilly, Atty., Department of Labor, of the bar of the Supreme Court of North Carolina, pro hac vice,

by special leave of court, with whom Messrs. David G. Bress, U. S. Atty., Charles Donahue, Solicitor of Labor, Frank Q. Nebeker, Asst. U. S. Atty., and Alfred H. Myers, Atty., Department of Labor, were on the brief, for appellee Adler.

Mr. Joseph S. McCarthy, Washington, D. C., entered an appearance for appellee Associated Transport, Inc.

Before BAZELON, Chief Judge, and PRETTYMAN, Senior Circuit Judge, and DANAHER, BURGER, WRIGHT, McGOWAN, TAMM, LEVENTHAL and ROBINSON, Circuit Judges, sitting en banc.

LEVENTHAL, Circuit Judge:

In this workmen's compensation case appellee, Deputy Commissioner, concluded that the collapse and death of appellant's late husband, Edward E. Wheatley, on February 12, 1964, "did not arise out of and in the course of the employment." Her action to set aside this decision[1] was dismissed by the District Court, which granted summary judgment to appellee. We reverse.

**I**

The testimony established that the employee began his last day like any other work day. At 8:48 a. m. he punched in at Associated Transport Company, the trucking concern where he had been employed as a mechanic for seventeen years. He changed into work clothes and assembled his tools before starting in on his first repair job. Apparently before beginning actual repair work, Wheatley walked out into the yard adjacent to the garage to answer a call of nature. The "bathroom is way in the back of the terminal" and Wheatley, crippled in one leg, never "done much about climbing the steps," and "didn't do too much running around." It was an average day in winter, temperature about 40 degrees.

At about 9:30, Wheatley was observed heading back to the garage. About 40 feet from the shop, and without any visible reason, he collapsed. Aid was fruitless. The death certificate recited that death occurred at the hospital at 10:22 a. m., and this time was accepted by appellee. The autopsy report stated that Wheatley was suffering from marked arteriosclerotic heart disease, and appellee found that death resulted from myocardial insufficiency.

As appellee found, prior to the collapse neither the employee's wife nor his supervisor nor any co-worker had heard any suggestion from him that he was suffering from an ailment, nor did his appearance that morning suggest to any of them that he was suffering from any ailment or difficulty. His widow's uncontradicted testimony establishes that he had never had a heart problem that he was aware of prior to the date of his death, nor any ailments other than lumbago and an occasional cold. A week prior to his death his face was pink when he came home, and when she asked him about it he said it was cold weather in the mountains where he had been working on a trailer truck.

Appellee's order included these statements as his crucial findings of fact: On the morning of February 12, the employee "was not subject to any employment-related emotional disturbance or to any significant physical exertion." His collapse and death were caused by a myocardial insufficiency, due to a pre-existing advanced arteriosclerotic heart disease, which was "neither caused nor aggravated by the employment on February 12, 1964 or prior thereto." The myocardial insufficiency "resulted from the natural progression of the arteriosclerotic heart disease."

Although judicial review of workmen's compensation proceedings is

1. The action was brought under the provisions of the Longshoremen's and Harbor Workers' Compensation Act of March 4, 1927, 44 Stat. 1424, as amended, 33 U.S.C. §§ 901–950, made applicable to the District of Columbia by D.C. Code § 36–501.

limited,[2] the courts must set aside compensation orders, including denials of claims, when "not in accordance with law." 33 U.S.C. § 921(b) (1964). An administrative order must be set aside if it rests on factual premises not based on substantial record evidence or if the agency's underlying standards are not in accord with law. With this in mind we examine the record and premises underlying appellee's order.

Claimant's medical expert, Dr. Chapman, testified without contradiction, on examination of the coroner's autopsy report, and of the microscopic slides obtained from the morgue (which revealed an absence of a significant degeneration of heart tissue), that the attack could have begun no more than one and one-half hours before death, and probably began less than an hour before then. The seizure therefore began after Wheatley arrived at work.[3] Claimant's expert further testified that such an attack is always preceded by some precipitating event, and that the strain of urinating on a cold day could have brought it on.

Employer's counsel called Dr. Thomas, and assuming in hypothetical form the salient events of the morning (including the urinating in the cold), asked whether he had an opinion "as to whether or not the death arose out of or in the course of the employment." Dr. Thomas testified that, on the basis of the assumptions stated and the autopsy report, he did have such an opinion. (He did not refer to, and it was later brought out, J.A. 19, that he had not examined, the coroner's microscopic slides that Dr. Chapman found material.) In his opinion the death "was not the result of any activity involved in this man's employment." He was then asked to state his reasons, and responded (J.A. 111):

> Well, according to the autopsy report this man had generalized arterio-

sclerosis with significant narrowing of the coronary arteries, and, as Dr. Chapman has indicated to you, anything can cause a sudden demise under these circumstances.

And, as he has pointed out, this can happen in the course of a patient sitting in bed or lying in bed or relaxing or sitting in a chair watching television, without necessarily having any exertion.

The absence of any specific stimulating or exertional episode makes me feel that the attack was in no way related to his employment.

It is conceivable that the mere fact of urinating and the stress and strain of trying to urinate on a cold day —which also is a factor, because coronary artery disease is affected adversely by cold, it produces constriction of blood vessels and it may increase the tendency or the propensity towards heart attacks or sudden death—these factors alone could have been sufficient to produce this death rather than any activity that the individual was in at the time of his death.

Employer's counsel went on to ask whether it was requisite that there be stress or trauma as a factor precipitating heart disease. Dr. Thomas replied that it was not, and added (J.A. 112/3):

> On the information, or from the information that I was allowed to read, I would say that there was nothing in the history or the events that were given to me that would make me feel that anything that happened to the deceased on that particular morning may have been a precipitating factor in that respect.

Asked on cross-examination whether he could express an opinion with reasonable medical certainty whether decedent's activities on the job, such as the urinat-

2. Cardillo v. Liberty Mut. Ins. Co., 330 U.S. 469, 477, 67 S.Ct. 801, 91 L.Ed. 1028 (1947); Hurley v. Lowe, 83 U.S. App.D.C. 123, 125–126, 168 F.2d 553, 555–556, cert. denied, 334 U.S. 828, 68 S.Ct. 1338, 92 L.Ed. 1756 (1948).

3. This is so even if the time of death is taken at 9:45 a. m. as stated in the autopsy certificate, and *a fortiori* if it was 10:22 a. m., as the Commissioner found.

ing, were a precipitating factor that caused death, he said that the urination could have caused a stress or strain that precipitated death. Asked whether this was more likely than not the cause, he said he could not really give a yes or no answer. Responding to a question of the commissioner, the witness said this urinating in the cold "could have been a more significant precipitating factor" than anything else the deceased did that he knew about. He was not able to mention any other more probable precipitating factor.

## II

The decision and order cannot be supported by reference to the opinion of the expert called by the employer that the employee's death "was not the result of any activity involved in this man's employment." His testimony is intelligible only on the assumption that he regarded Wheatley's urination-in-the-cold, in his own view as likely a precipitating factor as any, as not being "activity involved in this man's employment." The premise underlying his opinion is at core a proposition of law, not science, that lies outside the province of his expertise, and is not sustainable on this record.

▬ The general rule of law is that accidents and deaths "occurring while an employee is on his way to or from toilet facilities, or while he is engaged in relieving himself, arise within the course of employment, subject only to the possible question * * * of the reasonableness of the means or place chosen."[4] Recovery is denied on this ground when abnormal means are chosen despite the availability of satisfactory conventional facilities, and when the means chosen are both dangerous and unreasonable in the circumstances.[5] Working in this garage Wheatley used the nearby yard rather than walk, with his "stiff" leg, up a number of steps and across the building to the bathroom in the back. There was no hint that Wheatley had not made customary resort to these ad hoc facilities or that he had been forbidden to do so. Wheatley's use of the yard was not only for his convenience, but may have benefited his employer through the time saved. In any event, the employer did not show that he had forbidden Wheatley's use of the informal facilities, or that there had been no prior use of these facilities which might have put the employer, through its supervisors, on notice of the conduct and prompted a warning if such conduct was to be forbidden. On either of these possibilities, the burden was on the employer to illuminate the facts.

▬ It would not defeat compensation even if the act of urinating, in cold weather out of doors, is taken as not involving an unusual strain. The law in this jurisdiction does not require any unusual stress, and contemplates awards so long as the death or injury results from activity in the course of employment.[6] It makes no difference that the decedent was exposed to no more than the ordinary hazards of living and working, or that the same kind of injury might have occurred wherever he might have been.[7]

---

4. 1 A. LARSON, WORKMENS COMPENSATION LAW § 21.53 at 321 (1965).

5. *See id.* at §§ 21.82–21.84 at 340–48.

6. *See* Commercial Cas. Ins. Co. v. Hoage, 64 App.D.C. 158, 159, 75 F.2d 677, 678. cert. denied, 295 U.S. 733, 55 S.Ct. 645. 79 L.Ed. 1682 (1935):
 It has been held a number of times. and we think correctly, that an accidental injury may occur notwithstanding the injured is then engaged in his usual and ordinary work, and likewise that the injury need not be external. It is enough if something unexpectedly goes wrong within the human frame.

7. *See* Hartford Accident & Indem. Co. v. Cardillo, 72 App.D.C. 52, 54, 112 F.2d 11, 13, cert. denied 310 U.S. 649, 60 S.Ct. 1100, 84 L.Ed. 1415 (1940); New Amsterdam Cas. Co. v. Hoage, 61 App.D.C. 306, 307, 62 F.2d 468, 469, cert. denied, 288 U.S. 608, 53 S.Ct. 400, 77 L.Ed. 982 (1933).

Taking the commissioner's decision as we find it,[8] it cannot be sustained by hypothesizing that he might have ruled that an injury or seizure which occurs while an employee is urinating in the yard outside is by that fact excluded from the coverage of the law. We need not consider whether such a standard might be permissible, notwithstanding contrary rulings already noted. If such a standard is to be the basis of decision, it must be presented with a reasoned analysis and in such form as to show that it was invoked as a standard of general application, and was not an ad hoc rule being applied obliquely for one occasion without any purpose of breadth in application.

## III

■■ There is an express statutory presumption that the "claim comes within the provisions of this chapter," a presumption of compensability grounded in the "humanitarian nature" of the Act.[9] Moreover, and this is significant in the present case, the fact that an injury or death occurs "in the course of employment strengthens the presumption that it arises out of the employment, with doubts resolved in the claimant's favor." Vendemia v. Cristaldi, 95 U.S.App.D.C. 230, 232, 221 F.2d 103, 105 (1955). The rejection of the claim cannot be supported as a matter of law unless the record contains "substantial evidence" showing that death did not arise out of employment.[10]

■■ It is undisputed that the employee had a pre-existing condition of arteriosclerosis. But it is settled that an aggravation of a pre-existing condition may constitute a compensable accidental injury under the Act, Howell v. Einbinder, 121 U.S.App.D.C. 312, 313, 350 F.2d 442, 443 (1965).[11] Thus the statutory presumption brings within the Act a death that results in the course of employment when a pre-existing internal disorder takes a sudden turn for the worse, unless the record contains substantial evidence as to the cause of the collapse which shows that it was not aggravated or precipitated by a work-related factor. Butler v. District Parking Management Co., 124 U.S.App.D.C. 195, 363 F.2d 682 (1966). Complaints have been voiced against the aggravation rule as applied to cardiac cases, and suggestions made for narrowing compensability.[12] But these would require changes in our long-standing construction of the Act, and they are appropriately addressed to the Congress.

The record plainly contains testimony that is in accordance with the thrust of the presumption, for sustaining the claim. The question is whether there is substantial evidence in the record to dispel the presumption. After careful analysis we conclude that neither the testimony of Dr. Thomas, relied on by appellee, nor anything else in the record constitutes such substantial evidence, and that hence the order is without adequate record support.

Dr. Thomas testified on the basis of the autopsy report, which stated that Wheatley had "marked coronary arteriosclerosis." He agreed that all persons aged 60 have arteriosclerosis "in varying degrees." The word "marked" "would

8. SEC v. Chenery Corp., 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943).

9. 33 U.S.C. § 920(a) (1964); O'Keeffe v. Smith, Hinchman & Grylls Assoc., 380 U.S. 359, 362, 85 S.Ct. 1012, 13 L.Ed. 2d 895 (1965).

10. Del Vecchio v. Bowers, 296 U.S. 280, 56 S.Ct. 190, 80 L.Ed. 229 (1935); Butler v. District Parking Management Co., 124 U.S.App.D.C. 195, 363 F.2d 682 (1966).

11. "Thus the cases almost invariably decide that the fact that the injury would not have resulted but for the pre-existing disease, or might just as well have been caused by a similar strain at home or at recreation, are both immaterial." H. McNIECE, HEART DISEASE AND THE LAW 12 (1961). See also id. at 57–59.

12. See generally Larson, The "Heart Cases" in Workmen's Compensation: An Analysis and Suggested Solution, 65 MICH.L.REV. 441 (1967); H. McNIECE, supra note 11, at 110–138 (1961).

connote to my mind a more severe degree" than "medium or mild," though he did not know whether it "means one centimeter or five centimeters." (J.A. 114).

Dr. Thomas testified: "With * * * reasonable medical certainty, I would say that the coronary arteriosclerosis was the major reason for this man's having the attack." (J.A. 117) This followed: "Q. But can you tell us what * * * pushed it over the brink, Doctor? A. What the precipitating event was, I cannot say." (J.A. 117). So he was unable to state an opinion on the key question whether there was a work-related factor that aggravated the employee's condition.

He testified that it was possible that death occurred even in the absence of stress or strain. He also testified that there is a greater possibility of sudden death in the absence of stress for a patient who has narrowing of coronary blood vessels as indicated in the autopsy report than for a patient who doesn't have any coronary heart disease (J.A. 112). But he did *not* testify in any way as to the probability, even for a person with coronary disease, of death in the absence of stress or strain, whether the probability was 90–10, or 10–90, or 50–50.

As appears from this expert's testimony quoted above (from J.A. 111), his own explanation for his conclusion that death was not the result of any employment activity referred to urinating-in-the-cold as sufficient to produce death. His assumption that the urinating-in-the-cold was not work-related was on a point of law on which his testimony has no weight. It is significant, however, that he responded to the question of employer's counsel asking him to explain the basis for his conclusion by volunteering a comment on the significance of urinating-in-the-cold as a meaningful medical consideration—including the effect of the cold in constricting the blood vessels and

increasing propensity toward heart attacks. Obviously that medical testimony was favorable toward allowance rather than rejection of the claim.

Sometimes so-called "negative" evidence is informative. If a man has no blood in the sputum, no cough, no weakness, no headache, no elevation of temperature or pulse, no stuffiness or pain in the chest—then from all these facts, a doctor can say "with reasonable medical certainty," or as a matter of some probability, that this man does not have pneumonia.

But here the doctor did not give an opinion as a matter of reasonable medical certainty. He did not even respond to the Commissioner's effort to obtain an opinion in terms of probability. He was not able to say, one way or the other, either as a reasonable medical certainty or with any other estimate of probability, that the urinating-in-the-cold was not the factor bringing on the heart seizure.

The possibility that Wheatley's death was due to urinating-in-the-cold is not a mere fancy or wisp of "might have been," like the musing of the old judge in Whittier's poem who was enchanted by the sight of Maud Muller. It was volunteered by Dr. Thomas as a realistic possibility providing meaningful perspective for his opinion. This certainly sufficed, in the light of the statutory presumption, to require substantial evidence in refutation, at least to articulate that this possibility was improbable—if he could say that it was improbable.

Rebutting evidence may be hard to develop, given the limits of medical ability to reconstruct why "something unexpectedly goes wrong within the human frame." But that is precisely why the presumption was inserted by Congress. It signals and reflects a strong legislative policy favoring awards in arguable cases. We have frequently pointed out that since the statute "should be construed liberally" [13] in favor of em-

---

13. Baltimore & Philadelphia Steamboat Co. v. Norton, 284 U.S. 408, 414, 52 S.Ct. 187, 76 L.Ed. 366 (1932) (Butler, J.).

"The law's humanitarian purpose is to ensure that all shall be compensated, regardless of the employer's fault." Jack-

ployees and their dependents, it is "in their favor [that] doubts, including the factual, are to be resolved." [14]

 This approach has also characterized our application of the substantial evidence test in these cases. We have made it clear that we "will not sustain the administrative findings merely because they are substantiated by some isolated evidence. Our review must also take account of the settled rule that the Act is to be construed with a view to its beneficent purposes. Doubts, including the factual, are to be resolved in favor of the employee or his dependent family." [15]

Where there is substantial evidence on both sides of an issue the Commissioner's finding is conclusive. But here the record does not contain substantial evidence to dispel the statutory presumption.

Reversed.

DANAHER, Circuit Judge (concurring in the result):

My vote to reverse is based upon all circumstances of record analyzed in light of what I deem to be the controlling principles. Without specifying details beyond what my respective colleagues have already done, I will explain my position.

## I

A claim to be compensable under the Act must stem from "accidental injury or death arising out of and in the course of employment." [1] The decedent Wheatley,

a garage mechanic, had reported for duty at 8:48 A.M. on February 12, 1964, then some 18 minutes late after coming in from Beltsville. After changing into work clothes, Wheatley about 9:15 A.M. was instructed by his foreman as to the morning's job. Wheatley placed a hammer, a chisel and a pair of pliers next to a tractor in the employer's garage. Although he otherwise had not yet commenced the assigned task, I deem it undeniable that Wheatley had entered upon his duties and that the crucial episode under discussion was shown as a matter of law to have occurred "in the course of employment."

## II

The next question on our record arises from the requirement that the death be one "arising out of" that employment. Some have seemed to think that a claim is compensable only if the "accidental injury or death" specified in the Act shall have been *caused* by the employment. Acceptance of so narrow a view, that of actual "causation," would seem unduly to limit a possible basis for a claim "arising out of" the employment, for the element of occupational hazard must be recognized. On this very point and in some situations a much broader scope must be accorded to the language as the Supreme Court has instructed us. It is enough, we have been told,

> "that the 'obligations or conditions' of employment create the 'zone of special danger' out of which the injury arose." [2]

son v. Lykes Bros. S. S. Co., 386 U.S. 731, 736, 87 S.Ct. 1419, 1423, 18 L.Ed.2d 488 (1967). This expression in Justice Stewart's dissent was not controverted in the majority opinion.

14. *See* J. V. Vozzolo, Inc. v. Britton, 126 U.S.App.D.C. 259, 377 F.2d 144, 147 (1967); Howell v. Einbinder, 121 U.S. App.D.C. 312, 314, 350 F.2d 442, 444 (1965); Hancock v. Einbinder, 114 U.S. App.D.C. 67, 70, 310 F.2d 872, 875 (1962); Phoenix Assurance Co. of New York v. Britton, 110 U.S.App.D.C. 118, 120, 289 F.2d 784, 786 (1961).

15. Friend v. Britton, 95 U.S.App.D.C. 139, 141, 220 F.2d 820, 822 (1955).

1. Longshoremen's and Harbor Workers' Compensation Act, § 2(2), 33 U.S.C. § 902(2) (1964), hereinafter referred to as the Act.

2. O'Leary v. Brown-Pacific-Maxon, 340 U.S. 504, 507, 71 S.Ct. 470, 472, 95 L.Ed. 483 (1951); and we have so applied that test, Wolff v. Britton, 117 U.S.App.D.C. 209, 213, 327 F.2d 181, 184 (1964), in determining that an employee must have encountered some occupational hazard or that the injury must have been related to his work. In the *Wolff* case the appellant conceded that death had resulted from an idiopathic seizure, not related to or caused by any condition of employment.

### III

The Act, 33 U.S.C. § 920(a) (1964), provides:

"In any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of substantial evidence to the contrary—

"(a) That the claim comes within the provisions of this chapter."

The effect to be given to the presumption so prescribed goes directly to the core of this case. Wheatley, before undertaking actual manual labor, left the garage and stepped outdoors. He had a crippled leg. "The bathroom is way in the back of the terminal," an eyewitness explained, as he testified that he had seen Wheatley urinating in an area between two trucks in the yard, apparently only 50 feet or so from the garage. To accomplish his purpose, a trip across the yard and up a flight of steps, which might have presented no problem at all to an able-bodied fellow employee, became a condition of employment for the partially crippled Wheatley, giving rise to a "zone of special danger," an occupational hazard. Within a matter of minutes, Wheatley collapsed and died. The Deputy Commissioner seems to have given no consideration whatever to this aspect of the "arising out of" test. He simply found—without regard to the applicable principles above stated—"that the collapse and death of the employee were not causally related to the circumstances of the employment." Thus and therein by my assessment of the law and the failure to apply it here lay the error

of law on account of which I am impelled to reverse.

The statutory presumption required refutation by substantial contravening evidence and here had been given no place as the Deputy Commissioner reached and announced his ultimate conclusion. Had he so weighed the specific issue as stipulated by the parties and then concluded that the presumption had been overcome, and additionally on substantial evidence had found subordinate facts to support his determination that the collapse and death did not "arise out of" the employment, the position of my dissenting colleagues would be unassailable. But, as I see it, since the Deputy Commissioner did not so dispose of the "arising out of" issue in light of the presumption, the conflicting evidence rule does not here apply.

By the same token I do not join the approach [3] taken by the majority, for it seems to me the result properly should be reached by the route I have been developing. I continue at the risk of some redundancy.

### IV

The Deputy Commissioner found that Wheatley's collapse and sudden death were "caused by a myocardial insufficiency due to the advanced arteriosclerotic heart disease" from which he suffered. Since on this record as I read it, and additionally by virtue of the presumption, the death clearly had occurred *in the course of* employment, the general principles of law do not apply as the Supreme Court has put it. The Act "announces its own rule" [4] that presumably, likewise,

---

3. Certain cases to which we have been pointed have *no controlling effect here* for each involved some clearly job-related physical exertion which served as a causal factor in precipitating the injury complained of. *See, e. g.,* General Accident Fire & Life Assur. Corp. v. Donovan, 102 U.S.App.D.C. 204, 251 F.2d 915 (1958); Robinson v. Bradshaw, 92 U.S.App.D.C. 216, 219, 206 F.2d 435, 438, cert. denied, 346 U.S. 899, 74 S.Ct. 226, 98 L.Ed. 400 (1953), where "death in the course of employment [resulted] from an aggrava-

tion, *caused by the employment,* of a pre-existing illness * * *" (emphasis added); Commercial Casualty Ins. Co. v. Hoage, 64 App.D.C. 158, 159, 75 F.2d 677, 678 (1935), where we noted "that an accidental injury may occur notwithstanding the injured is *then engaged in his usual and ordinary work,* and likewise that the injury need not be external." (Emphasis added.)

4. Del Vecchio v. Bowers, 296 U.S. 280, 286, 56 S.Ct. 190, 193 (1935).

the death was one "arising out of" the employment.

Thus "[t]he employer must rebut this *prima facies*." [5] The employer's expert, its only witness, here testified directly that "[t]he absence of any specific stimulating or exertional episode makes me feel that the attack was in no way related to his employment." [6]

The Court continued "that the evidence to overcome the effect of the presumption must be substantial," explaining further that "a finding must be supported by evidence." [7]

If an employer shall have "carried his burden" of refuting the effect of the presumption, that "presumption falls out of the case." [8] It is not evidence by itself, for its *office is to control the result where there is an entire lack of competent evidence*." [9] (Emphasis added.)

My careful reading of the evidence here persuades me that the employer utterly failed by substantial evidence to carry its burden [10] of dispelling the effect of the presumption. Accordingly the result must be controlled by the statute, and upon the analysis I have respectfully submitted, reversal is required.

PRETTYMAN, Senior Circuit Judge, with whom BURGER and TAMM, Circuit Judges, concur, dissenting:

I agree with Judge Tamm's opinion, *infra*, but, since I was the author of the majority opinion of the division, I feel constrained to file the following:

The Deputy Commissioner denied this claim. His conclusion must be sustained if it is supported by substantial evidence, unless irrational or forbidden by law. As I understand it, nobody says the Commissioner was irrational. The court suggests that his conclusion was not supported by substantial evidence and therefore was forbidden by law. So from two approaches the problem is whether the denial was supported by substantial evidence. And that involves some abstract rationalizing.

The statute is that these claims must be allowed unless substantial evidence to the contrary appears. Did substantial evidence to the contrary appear in the case at bar? No witness stated directly and affirmatively that Wheatley's heart attack arose out of or was causally connected with his employment; in other words, there was no specific direct evidence in support. And no witness stated that in his expert opinion it was thus causally connected. No documentary evidence was to that effect. On the other hand there was ample showing of what was not the situation. There was no heavy work, no strain, no excitement, no outward appearance of inward disturbance, no unusual physical activity, no emotional distress, no discernible warning, no anticipatory indication. The victim had a severe arteriosclerosis. Medi-

---

5. *Id.*

6. From the statement so quoted and from his testimony in its entirety, the doctor seems to have deemed necessary the demonstration of some *external* precipitating factor before there could be an injury "arising out of" the employment. But *Del Vecchio, supra,* teaches that precisely in circumstances as here shown, a claimant is entitled to the benefit of the statutory presumption.

The expert explained that the "stress and strain of trying to urinate on a cold day" is a factor since cold produces constrictions of blood vessels and it may increase the tendency or propensity toward heart attacks or sudden death.

Such in brief sum was the evidence offered "to overcome the effect of the pre-

sumption * * *." 296 U.S. at 286, 56 S.Ct. at 193.

7. Del Vecchio v. Bowers, *supra* note 4.

8. *Id.*

9. *Id.*

10. Indeed, in my reading, the employer's evidence presented no conflict with that offered by the claimant. Had it done so, the Deputy Commissioner would have been bound to resolve on the issue so created "upon the whole body of proof pro and con." (296 U.S. at 287, 56 S.Ct. at 193) His inferences thereupon if substantially supported by competent evidence, would, of course, be controlling.

cal evidence was that for people with this affliction death may be triggered by a shock or strain (called a precipitating event), or it may devolve from progress of the disease alone with no outside factor. The testimony did not fix which was the case here. The doctors went only so far as to say that the back-alley incident might have been a precipitating event. The Deputy Commissioner did not find the "might have been" persuasive but deemed the accumulation of negatives to constitute substantial negative evidence and, on summation, found it not offset by any positive evidentiary item. It seems to me that an accumulation of negatives can constitute a negative. Positive proof that a person has no symptom of a certain disease seems to me to be substantial evidence that he does not have that disease; it may not be proof positive, but it is substantial evidence. Thus in the case at bar the affirmative evidence that Wheatley that day had no experience known or generally thought to precipitate a heart failure in an arteriosclerotic patient, and exhibited none of the symptoms of such a precipitating event, is substantial evidence that he experienced no such incident. We need not find that he had no such experience. We need find only that there was substantial evidence he did not.[1] When we find the Deputy Commissioner's conclusion bottomed upon such a record, our function is at an end.

My brethren in the majority say the law in this jurisdiction contemplates awards so long as the death or injury results from activity in the course of employment. The statute does not so say. It says "arising out of and" in the course of. I think this is the first time we have carried the non-employment activity concept into the heart disease area. In doing so we wipe out a statutory phrase.

I would affirm the Deputy Commissioner.

TAMM, Circuit Judge, with whom PRETTYMAN, Senior Circuit Judge, and BURGER, Circuit Judge, concur, dissenting:

It is unfortunate that the majority opinion ignores the basic principles which we, following pronouncements of the Supreme Court, have established as guidelines for the District Court and the executives administering employees' compensation. Our opinion in Wolff v. Britton, 117 U.S.App.D.C. 209, 213, 328 F.2d 181, 185 (1964), in my view correctly stated the law that where the Deputy Commissioner reached a conclusion upon a record which supported his findings "there is factual and legal support for that conclusion, [and] our task is at an end," quoting Cardillo v. Liberty Mutual Insurance Co., 330 U.S. 469, 479, 67 S.Ct. 801, 91 L.Ed. 1028 (1947). Our opinion in *Wolff* pointed out that the work "must bring 'the worker within the orbit of whatever dangers the environment affords.'" 117 U.S.App.D.C. at 213, 328 F.2d at 185. I find nothing in this record that even suggests that the appellant's work brought him within the orbit of any real, possible or probable danger. Applying the test outlined in O'Leary v. Brown-Pacific-Maxon, Inc., 340 U.S. 504, 507, 71 S.Ct. 470, 472, 95 L.Ed. 483 (1951), the record is completely devoid of any showing "that the 'obligations or conditions' of employment" created any "'zone of special danger' out of which the injury arose."

The Deputy Commissioner-appellee made detailed findings of fact as a result of his hearing in this case.[1] As I have indicated, these findings are supported and justified by the evidence. We are *required* to sustain the decisions of the Deputy Commissioner if they are supported by substantial evidence, O'Leary v. Brown-Pacific-Maxon, Inc., *supra*, or if his holding is not irrational, O'Keeffe v. Smith, Hinchman & Grylls Associates, Inc., 380 U.S. 359, 85 S.Ct. 1012, 13 L.Ed.

1. Del Vecchio v. Bowers, 296 U.S. 280, 56 S.Ct. 190, 80 L.Ed. 229 (1935); Norton v. Warner Co., 321 U.S. 565, 568, 64 S.Ct. 747, 88 L.Ed. 931 (1944).

1. *See* Joint Appendix 14–16.

2d 895 (1965) or if the order under review is not "forbidden by the law," Cardillo v. Liberty Mutual Insurance Co., *supra* at 478, 67 S.Ct. 801. As the majority opinion accurately points out, the evidence before the Commissioner easily permits the drawing of adverse inferences, but this fact does not allow us to overthrow the inferences drawn by the Deputy Commissioner if his selection is reasonable. Cardillo v. Liberty Mutual Insurance Co., *supra;* Del Vecchio v. Bowers, 296 U.S. 280, 56 S.Ct. 190, 80 L.Ed. 229 (1935); Voehl v. Indemnity Insurance Co., 288 U.S. 162, 53 S.Ct. 380, 77 L.Ed. 676 (1933). We have repeatedly adhered to these principles. Wolff v. Britton, *supra,* Phoenix Assurance Co. of New York v. Britton, 110 U.S.App.D.C. 118, 120, 289 F.2d 784, 786 (1961); General Accident Fire & Life Assurance Corp. v. Britton, 103 U.S.App.D.C. 135, 255 F.2d 544 (1958); Liberty Mutual Insurance Co. v. Britton, 100 U.S.App. D.C. 236, 243 F.2d 659 (1957); United States Fidelity & Guaranty Co. v. Britton, 88 U.S.App.D.C. 293, 294, 188 F.2d 674, 675 (1951). The principle has been applied even in instances where, as stated in Cardillo v. Liberty Mutual Insurance Co., supra, at 478, 67 S.Ct. 801, the inference to be drawn from the facts is "more legal than factual. * * *" Thus, even though the reviewing court might not agree with the Deputy Commissioner's determination for itself (see Wolff v. Britton, *supra*), that determination, if not "forbidden by the law," is to be sustained. Cardillo v. Liberty Mutual Insurance Co., *supra* at 478, 67 S.Ct. 801.

My deep concern about the majority opinion is that in an effort to achieve a humanitarian result my learned and well intentioned brethren are ignoring all established precedents and virtually placing this type of case on a basis of compassion. I readily recognize the liberal philosophy of the courts in construing workmen's compensation laws, but I cannot subscribe to a doctrine of superior credibility of claimants' witnesses or of inherent suspicion toward those witnesses, lay and professional, who testify adversely to the claim. This, however, must be the theory upon which the majority reject the testimony of Dr. Thomas, characterize it as not constituting "substantial evidence" and consequently conclude that it fails to support the Deputy Commissioner's findings. As too frequently happens on this court, the majority completely ignores the superior opportunity which the trier of facts, in this case the Deputy Commissioner, had to observe the witnesses in person, evaluate their manner of testifying and compare their relative characteristics before arriving at a determination of their credibility. Instead the majority opinion displays an extraordinary cerebral capacity in evaluating conflicting testimony on the basis of a cold printed record. They do so despite our ruling that "[i]t is of no consequence that we might have reached a different conclusion or that there is a sharp conflict in the testimony or even that the evidence preponderates strongly against the view expressed by the Deputy. We cannot substitute our judgment for the Deputy's judgment, *nor can we weigh the evidence.*" (Emphasis supplied.) Groom v. Cardillo, 73 App.D.C. 358, 359, 119 F.2d 697, 698 (1941). The series of cases in this field, that will result from today's opinion, will produce a brouhaha lacking foundation in logic, organization in reason and justification on any legal basis. The resulting paraselenae will negate the realism of proceedings before the Deputy Commissioner and dissolve the significance of any bona fide defense to a workmen's compensation claim.

The knowledgeable trial judge was not only justified in upholding the Deputy Commissioner's findings, but he was required to do so. O'Keeffe v. Smith, Hinchman & Grylls Associates, Inc., *supra;* O'Leary v. Brown-Pacific-Maxon, Inc., *supra*; Phoenix Assurance Co. v. Britton, *supra*; Gooding v. Willard, 209 F.2d 913 (2nd Cir. 1954); Hurley v. Lowe, 83 U.S.App.D.C. 123, 168 F.2d 553, cert. denied, 334 U.S. 828, 68 S.Ct. 1338, 92 L.Ed. 1756 (1948); Groom v. Cardillo, *supra*; General Accident Fire & Life Assurance Corp. v. Britton, *supra*. I would affirm the District Court.