851 F.2d 1500
 271 U.S.App.D.C. 273
 Unpublished Disposition
NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
Joan BOPST
v.
MARSH & McLENNAN, INC., et al.
 No. 87-1519.
 United States Court of Appeals, District of Columbia Circuit.
 April 29, 1988.
 
 Before WALD, Chief Judge, ROBINSON and STARR, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This case was brought on petition for review of an order of the Benefits Review Board and was briefed and argued by counsel. While the issues presented occasion no need for an opinion, they have been accorded full consideration by the court. See D.C.Cir. Rule 14(c) (August 1, 1987). On consideration thereof, it is
 
 
 2
 ORDERED and ADJUDGED, by the court, that the order of the Benefits Review Board under review herein is hereby affirmed, in accordance with the accompanying memorandum. It is
 
 
 3
 FURTHER ORDERED, by this court, sua sponte, that the Clerk shall withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir. Rule 15(b)(2) (August 1, 1987). This instruction to the Clerk is without prejudice to the right of any party at any time to move for expedited issuance of the mandate for good cause shown.
 
 MEMORANDUM
 I. Background
 
 4
 Petitioner, Joan Bopst, seeks review of a decision of the Benefits Review Board (the Board) affirming an Administrative Law Judge's (ALJ) order denying her widow's benefits under the Longshoremen's and Harbor Workers' Compensation Act (the Act), 33 U.S.C. Sec. 901 et seq. See D.C. Workmen's Compensation Act, 36 D.C. Code Sec. 501 et seq. (incorporating Longshoremen's Act by reference). Her husband, Alvin Bopst, was employed by the respondent, Marsh & McLennan, Inc., at the time of his death on May 17, 1981.
 
 
 5
 Mrs. Bopst claims that her husband's death was work-related and therefore compensable under the Act. The primary issue before us today is whether the Board correctly concluded that the employer presented sufficient evidence to rebut the statutory presumption of compensability. See 33 U.S.C. Sec. 920(a) ("it shall be presumed, in the absence of substantial evidence to the contrary ... [t]hat the claim comes within the provisions of this Act").
 
 
 6
 Mr. Bopst was a senior account executive at the time of his death. In part because his treating physician died shortly thereafter, there is no definitive indication of what caused Bopst's death. Petitioner's principal medical theory, however, is that Mr. Bopst died of cardiac arrhythmia resulting from an on-the-job heart attack sustained on one of two occasions--either during a business trip to Toledo on April 13, 1981 or during the inspection of a client's uranium mine in New Mexico on May 6, 1981. At oral argument petitioner's counsel also argued that abnormalities shown on Bopst's May 8, 1981 EKG were both related to his death at home in bed nine days later and caused or aggravated by his work. Below, petitioner claimed generally that job stress aggravated her husband's heart condition, which in turn lead to his early death.
 
 II. The Presumption of Compensability
 
 7
 The ALJ correctly began his inquiry with the presumption that Bopst's claim was compensable. Petitioner's Brief, Appendix A at 4. Although the ALJ may have incorrectly suggested otherwise, see id., the burden of producing substantial evidence that an injury is not work-related falls on the employer. To rebut this presumption an employer must offer substantial evidence that the employment did not cause or contribute to the injury or death. Swinton v. J. Frank Kelly, Inc., 554 F.2d 1075, 1083 (D.C.Cir.1976). This evidence "must be specific and comprehensive enough to sever the potential connection" to the work environment. Champion v. S & M Traylor Brother, 690 F.2d 285, 295 (D.C.Cir.1982) (quoting Parsons Corp. of California v. Director, 619 F.2d 38 (9th Cir.1980)).
 
 
 8
 Once the employer has produced such evidence, the presumption is no longer relevant and the ALJ had to determine, by a preponderance of the evidence, whether Bopst's employment caused or contributed to his death. Whitmore v. AFIA Worldwide Ins., 837 F.2d 513, 515 (D.C.Cir.1988)
 
 
 9
 The petitioner claims that the evidence submitted is insufficient to overcome the initial presumption. Nonetheless, our review of the record finds substantial evidence that Bopst's death was not caused by an on-the-job heart attack and supports the ALJ's ultimate finding that the preponderance of the evidence came down on the employer's side. It is not even certain that he died of a heart attack, as one medical expert testified that his death could have been the result of a stroke. Even if he did die from a heart attack, it is undisputed that he had pre-existing hypertension and probably coronary artery disease, which are permanent disabilities. Mr. Bopst was overweight as well. The record also reveals that not long before his death he had experienced chest pain while playing tennis.
 
 
 10
 While petitioner's experts relied on the May 8th EKG as evidence of a recent myocardial infarction, the employer's experts offered contrary interpretations of the test. Moreover, the employer's medical experts testified that a normally 70-80% accurate Thalium Scan, taken on May 12, 1981 after both business trips, did not indicate a myocardial infarction. This evidence alone specifically answers the theory of petitioner's medical expert that Bopst died of cardiac arrhythmia caused by an earlier, unnoticed, work-related heart attack. Furthermore, the record indicates that cardiac arrhythmia only occurs in approximately 10% of hospitalized patients who have in fact suffered a myocardial infarction. While the ALJ's computations based on this statistical evidence may not be mathematically sound, they do indicate the remoteness of the scenario proposed by the petitioner. More important, the evidence discussed above is substantial and specifically addresses what petitioner believed to be the strongest potential causal link between Mr. Bopst's job and his death.
 
 
 11
 The employer also submitted lay evidence directed at further severing this link. This evidence demonstrates that Mr. Bopst was not observed to suffer any pain or other outward indications of a heart attack. During his Toledo trip he made no complaints about his health to his traveling companion. Similarly, the employer introduced testimony that despite Bopst's profuse sweating during his tour of the New Mexico uranium mine, his condition did not appear any worse than that of an average person hiking in an underground mine for the first time. And again, after leaving the mine, Bopst made no complaints about his health and drove himself and a business associate to the airport.
 
 
 12
 Considered cumulatively, the employer's evidence that Bopst did not die of cardiac arrhythmia brought about by a myocardial infarction sustained in the uranium mine or on the Toledo trip is substantial.
 
 
 13
 The petitioner also claims that Bopst's business trips aggravated his cardiovascular condition and points to abnormalities in the May 8, 1981 EKG as evidence on this point. The employer's medical expert testified, however, that he doubted that there existed any causal connection between the trips and the abnormalities. He also offered the factual testimony that the EKG demonstrated nothing more than that some change had occurred at some time between October 1970 and May 8, 1981. Throughout this entire period Bopst undisputably had been on medication for hypertension. He was overweight at 6'4"' and approximately 250 pounds. Under these circumstances, the medical testimony that Bopst's work was unlikely to have aggravated his heart condition is credible.
 
 
 14
 Finally, petitioner points to no evidence of unusual job stress, whereas the record indicates that Bopst in fact left work early each day during the week before his death.
 
 
 15
 Contrary to the petitioner's suggestion, the employer need not "definitively prove that Mr. Bopst's injury was not related to his employment" in order to rebut the Sec. 20(a) presumption, Petitioner's Brief at 5; rather he must offer substantial evidence to that effect. While the precise cause of Bopst's death is not known, the evidence that it was not a work-related heart attack is substantial.
 
 III. The Board's Ruling
 
 16
 Once we have concluded that the evidence submitted is sufficient to rebut the statutory presumption this court's inquiry is limited; "[w]here there is substantial evidence on both sides of an issue the [Board's] finding is conclusive." Wheatley v. Adler, 407 F.2d 307, 314 (D.C.Cir.1968). Once the presumption is overcome, it is immaterial that we might have reached a different result deciding the issue de novo. See Whitmore 837 F.2d at 516.
 
 
 17
 The Board concluded that, in reaching his determination, the ALJ credited the opinions of the employer's experts, Drs. Termini and Hallal, over that of the petitioner's, Dr. Schwartz and that this determination was within his discretion. Petitioner now raises no reversible error committed by the ALJ in weighing the conflicting testimony nor by the Board in reviewing his determination.
 
 
 18
 Therefore, we affirm the opinion of the Board upholding the ALJ's initial decision.