Wayne P. WHITMORE, Petitioner,

v.

AFIA WORLDWIDE INSURANCE, Continental Insurance Company and Director, Office of Workers' Compensation Programs, Department of Labor, Respondents.

No. 86–1709.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 15, 1987.

Decided Jan. 26, 1988.

Joseph W. Pitterich, Bethesda, Md., for petitioner.

Stephen G. Huggard, of the bar of the Court of Appeals of the District of Columbia, pro hac vice, by special leave of this Court, with whom James C. Gregg and D'Ana E. Johnson, Washington, D.C., were on the brief, for respondents AFIA Worldwide Ins. Co. and Continental Ins. Co.

Marianne Demetral Smith, Solicitor's Office, Dept. of Labor, Washington, D.C., entered an appearance for respondent Office of Workers' Compensation Programs, Dept. of Labor.

Before BUCKLEY and SENTELLE, Circuit Judges, and MARKEY,[*] Chief Judge.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

This petition for review arises from a worker's compensation claim filed by the petitioner, Wayne P. Whitmore (Whitmore), against his employer, AFIA Worldwide Insurance Company. Compensation was denied by the Administrative Law Judge (ALJ) after he conducted a formal hearing. The petitioner then appealed the ALJ's decision to the Benefits Review Board (BRB) of the United States Department of Labor. The BRB affirmed the ALJ's decision, finding it to be supported by substantial evidence as required by the Longshore and Harbor Workers' Compensation Act (the ACT), 33 U.S.C. § 901 *et seq.*[1]

On review, we find the petitioner's assignments of error to be without merit and, therefore, affirm the BRB's decision.

## I. The Facts

Whitmore began his employment with AFIA on April 13, 1980. His primary duties were as the manager of a branch office and as the supervisor responsible for underwriting international insurance policies. Whitmore had 10 years of experience in the insurance industry, although his new employment encompassed facets of the business he had not previously encountered.

On April 22, 1980, Whitmore and an assistant manager were driving to Virginia for a business meeting with a client. While enroute, Whitmore developed a severe toothache for which he took medication. Unfortunately, the pain persisted and the assistant manager had to drive back to Washington, D.C.

The next morning, Whitmore went to work at the usual time. His testimony indicates that while the pace at the office was hectic, no single event was particularly disturbing. Shortly before noon, Whitmore became ill and asked a co-worker to phone his dentist to inquire about a possible reaction to the toothache medication. The dentist suggested that Whitmore seek medical attention. Upon arrival at a local hospital, Whitmore found that he had suffered an acute heart attack.

Whitmore's heart attack disabled him until July of 1980, when he returned to work on a part-time basis. In November of 1980, he returned to work full-time.

On March 9, 1981, after taking a strenuous walk during his lunch hour, Whitmore began to experience "flip-flops" in his chest. He left work early and went to a nearby hospital. He was diagnosed as a victim of cardiac arrhythmia and was hospitalized. Thereafter, Whitmore underwent double bypass heart surgery and an automatic internal defibrillator was implanted.[2] Upon the advice of his doctors, Whitmore never returned to work after the incident on March 9, 1981.

---

[*] Of the United States Court of Appeals for the Federal Circuit, sitting by designation pursuant to 28 U.S.C. § 291(a).

[1.] The situs of Mr. Whitmore's office was within the District of Columbia. For claims arising on or before July 1, 1982, the ACT was made applicable to the District of Columbia by the 1928 D.C. Workmen's Compensation Act, 36 D.C.Code § 501 *et seq.* Post–July 1, 1982, claims are now covered under a superseding enactment, the District of Columbia Workers' Compensation Act of 1979, 36 D.C.Code Ann. § 36–301 *et seq.*

[2.] An automatic internal defibrillator is a device which shocks the heart in the event it stops.

Pursuant to the ACT, Whitmore filed a claim for permanent-total disability benefits. He alleged that his heart attack, or alternatively, his cardiac arrhythmia was caused or compounded by stress related to his employment. The ALJ held a formal hearing on Whitmore's claim on August 3, 1983. The testimony of three witnesses and several medical records were introduced into evidence.

The petitioner's witnesses were himself and his medical expert, Dr. Schwartz. The respondent's (employer's) only witness was their medical expert, Dr. Shugoll. Whitmore testified that he was subjected to stress while employed by AFIA, but that the stress was due to an accumulation of factors rather than any particular event.[3]

The medical opinions of Dr. Schwartz and Dr. Shugoll differed in critical respects. Dr. Schwartz testified that stress is a complex factor, the effects of which vary greatly from individual to individual. He concluded that Whitmore's heart attack, and his subsequent arrhythmia, were caused by the accumulation of chronic emotional stressors found in his employment.

Conversely, Dr. Shugoll concluded that neither Whitmore's heart attack, nor his subsequent arrhythmia was caused by job-related stress. Dr. Shugoll opined that while there was a theory within the medical community that chronic stress could cause a heart attack, that theory has never been proven by scientific evidence. He testified that the American Heart Association had recently completed an exhaustive research study on that issue, and the results were insufficient to prove any correlation between chronic stress and heart attacks.

At the conclusion of the hearing, ALJ Murty denied Whitmore's claim. Whitmore then appealed to the BRB. The BRB affirmed the ALJ's decision since they deter-mined that his decision was based on substantial evidence.

## II. THE SCOPE OF REVIEW

Under the ACT, the BRB is required to accept the ALJ's findings of fact as conclusive if they are supported by substantial evidence on the record as a whole.[4] 33 U.S.C. § 921(b)(3). Similarly, this Court's scope of review is limited when reviewing the decisions of the BRB. The only issues we may consider are: (1) whether the BRB adhered to the applicable scope of review; (2) whether the BRB committed any errors of law; and (3) whether the ALJ's findings of fact are supported by substantial evidence on the record taken as a whole. *Crum v. General Adjustment Bureau*, 738 F.2d 474, 477 (D.C.Cir.1984).

## III. ANALYSIS

Under the ACT there is a rebuttable presumption that the claim "comes within the provisions of this [statute]." 33 U.S.C. § 920(a). The ACT is humanitarian in nature and requires that close questions, even of fact, must be resolved in favor of the claimant. *Friend v. Britton*, 220 F.2d 820 (D.C.Cir.), *cert. denied*, 350 U.S. 836, 76 S.Ct. 72, 100 L.Ed. 745 (1955). Once the § 920(a) presumption arises, the burden of going forward shifts to the employer to produce substantial evidence to rebut the presumption. However, if the employer produces substantial evidence, then the presumption is rebutted, and it falls out of the case. *Del Vecchio v. Bowers*, 296 U.S. 280, 56 S.Ct. 190, 80 L.Ed. 229 (1935).

In the case at bar, the opinions of the medical experts were in drastic conflict. It was the ALJ's duty to decide which medical opinion was more credible. He accepted Dr. Shugoll's opinion that Whitmore's injuries were not job related since there was an absence of acute stress in the

---

**3.** Whitmore testified that he was anxious to perform well; that he was in a new job environment; that he had a pointed telephone conversation with an underwriter from New York; and that he had a broker "on his back" about issuing an insurance policy.

**4.** Substantial evidence means more than a scintilla, but less than a preponderance of the evidence. *Sprague v. Director, Office of Workers' Compensation*, 688 F.2d 862, 866 (1st Cir.1982).

evidence. The record indicates that the ALJ based his adoption of Dr. Shugoll's theory on his demeanor, his credentials as a cardiologist, and the logic of his testimony.

It is immaterial that another factfinder might have reached a different result in a *de novo* hearing. The BRB found that the ALJ's decision was based on substantial evidence and, therefore, his factfinding is conclusive on appeal. *O'Keeffe v. Smith, Hinchman & Grylls Associates*, 380 U.S. 359, 362, 85 S.Ct. 1012, 1014, 13 L.Ed.2d 895 (1965) (*per curiam*); *Crum, supra*, at 477.

Whitmore asserts that the ALJ violated the mandates of *Wheatley v. Adler*, 407 F.2d 307 (D.C.Cir.1968), when he stated that he was unable to find a "catastrophic event" upon which to base an award of compensation. *Wheatley* does hold that no unusual stress [or event] is necessary to award compensation. *Id.* at 312. However, taken in the proper context, we conclude that the ALJ's "catastrophic event" language meant only that he was unable to find any evidence of acute stress. Thus, the ALJ's word choice does not reflect the error of law asserted by Whitmore. Even assuming arguendo that the ALJ had been mistaken as to the law, on appeal the BRB correctly stated that the ACT does not require a "catastrophic event," and noted, as we now agree, that the ALJ's decision was nonetheless supported by substantial evidence and must be affirmed. Therefore, the ALJ properly denied Whitmore's claim since he accepted Dr. Shugoll's theory that chronic stress was not a cause of Whitmore's heart attack. *Wheatley* further stands for the proposition, germane to the case at bar, that the law of worker's compensation still requires an injury or death which occurs "in the course of employment" and "arises out of the employment." *Id.* at 312. *Wheatley* further holds "[w]here there is substantial evidence on both sides of an issue the Commissioner's [ALJ's] finding is conclusive." *Id.* at 314.

While in *Wheatley* the court held that the record before it did not contain sub-

stantial evidence to dispel the statutory presumption, the same is not the case in Whitmore's claim. We are not unmindful that the result in *Wheatley* is more typical than that which we reach today. Indeed, it may be the rare case in which a heart attack occurring on the job may be ruled noncompensable. The reason for the compensability of the attack in *Wheatley* and similar cases is the presence, in those cases, of substantial evidence that the heart attack is work related or that such attack constitutes a work-related aggravation of a pre-existing condition. While some evidence to the same effect was present in the instant case, the substantial evidence accepted by the ALJ was the testimony of Dr. Shugoll to the effect that Whitmore's attack was neither occasioned by work-related stress nor by a work-related aggravation of a pre-existing condition but rather was simply the natural consequence of his atherosclerosis. In other words, he linked it not to a work-related cause but to one nonwork related. The ALJ had before him substantial evidence, and we will not disturb his finding based thereon.

### IV. CONCLUSION

For the reasons stated above, we conclude that the BRB adhered to the proper scope of review, and that the BRB did not commit any errors of law. Moreover, we agree that the ALJ's findings of fact were based on substantial evidence on the record taken as a whole. Therefore, the BRB's decision is AFFIRMED.