CONTINENTAL INSURANCE CO., Plaintiff

v.

WORKMEN'S COMPENSATION COMMISSION, Defendant

AMERICAN SAMOA GOVERNMENT, SOUTHWEST MARINE
OF
SAMOA, Inc., AMERICAN INTERNATIONAL
UNDERWRITERS,
and ERNEST FUIMAONO, Real Parties in Interest

High Court of American Samoa
Trial Division

CA No. 75-89

June 8, 1990

Before REES, Associate Justice, TAUANU'U, Chief Associate Judge, and MATA'UTIA, Associate Judge.

Counsel: For Plaintiff, John L. Ward II
 For Defendant, Robert A. Dennison III
 For American Samoa Government, Richard D. Lerner,
 Assistant Attorney General
 For Southwest Marine and American International
 Underwriters, Roy J.D. Hall Jr.
 For Enesi Fuimaono, Gata E. Gurr

This is an action to set aside an order of the Workmen's Compensation Commission. Claimant Enesi Fuimaono was an employee of the American Samoa Government's marine railway from 1967 until 1985, when the facility was transferred (whether by sale, lease, or otherwise does not appear in the record) to Southwest Marine. Fuimaono continued as an employee of Southwest Marine until November 20, 1987, when he was pronounced totally disabled by mesothelioma, a type of lung cancer caused by exposure to asbestos. He was then placed on disability leave and his employment later terminated due to the disability.

During the time relevant to this action, Fuimaono's two successive employers were insured by at least three and possibly four workmen's compensation carriers. The American Samoa Government (hereinafter ASG) was self-insured until 1973. It was alleged before the Commission, although not proved to the Commission's satisfaction, that ASG was insured by Hartford Fire Insurance, Inc., between 1973 and 1976. Continental Insurance Company, the plaintiff in this action, was the workmen's compensation insurer for ASG from July 1, 1976 until April 30, 1985, when the facility was sold to Southwest Marine. American International Underwriters (hereinafter AIU) was the insurer of Southwest Marine at all times between May 1, 1985, and November 30, 1987. At the time of his disability claimant Fuimaono was making $10.10 per hour. The Commission therefore found that "[h]is then average weekly wage was $404." Workmen's Compensation Commission Finding of Fact No. 12.

The Commission further found that the claimant was exposed to asbestos while employed by ASG; that he was exposed to sandblasting

131

and painting while employed by both the ASG and Southwest Marine, but there was no evidence of any deleterious effects from these activities; that the use of asbestos products was "immediately terminated" when Southwest Marine took over the marine railway in 1985; and that the inventory of asbestos products was "immediately removed" at the same time. *See* Workmen's Compensation Commission Findings of Fact Nos. 5 - 7. The Commission therefore concluded that the disease arose out of and in the course of the claimant's employment by the ASG. Workmen's Compensation Commission Conclusion of Law 2. The Commission therefore ordered ASG and its insurer Continental to pay disability compensation.

Plaintiff Continental puts forth five principal arguments. First, it disputes the Commission's finding that claimant's employment at Southwest Marine did not contribute to his disability. Second, plaintiff argues that since it insured ASG during only part of the time the claimant was exposed to asbestos in the course of his employment by ASG, it should not be required to pay the entire compensation award. Third, it contends the Commission had insufficient evidence from which to conclude that claimant's weekly wage was $404. Fourth, it contends that the medical and travel expenses were incorrectly ruled compensable. Finally, it argues that the Commission failed to comply with certain statutory procedures.

At the outset we observe that the question whether occupational diseases are "injuries" within the American Samoa workmen's compensation statute is technically one of first impression. Unlike some statutes,[1] ours does not specifically include occupational diseases within the definition of the term "injury." Rather, this term is generally defined by A.S.C.A. § 32.0502(i) to include "any harmful change in the human organism arising out of and in the course of employment . . . ." Although occupational diseases differ from "typical" injuries in that they generally do not have a discrete and readily identifiable instant of occurrence, and although this may give rise to difficulties in the proof of causation, it nevertheless seems clear that such diseases are injuries within both the letter and the spirit of our statute.

---

[1] For instance, the federal Longshoreman's and Harbor Worker's Compensation Act, on which the American Samoa workmen's compensation statute is generally patterned, specifically includes occupational diseases within the definition of injuries. *See* 33 U.S.C. § 902(2) (1980).

We also observe that our task is not to substitute our own judgment for that of the Commission, but to set aside the order only if it is "not in accordance with law." A.S.C.A. § 32.0652(a). With respect to findings of fact and inferences therefrom, this standard requires the Commission's holdings to be upheld if supported "by substantial evidence." *Continental Insurance Co. v. Workmen's Compensation Commissioner*, 8 A.S.R.2d 152 (1988). This standard, in turn, is met if "'a reasoning mind reasonably could have reached the factual conclusion the agency reached.'" *Id.* at 155, quoting *Dickinson-Tidewater, Inc., v. Supervisor of Assessments*, 329 A.2d 18, 25 (1974).

## I. Liability of Southwest Marine and AIU

Plaintiff contends that Southwest Marine should rightfully be held liable for the claimant's benefits. The specific questions before us are whether the Commission's finding that the Southwest Marine employment was not a substantial contributing cause of the injury was supported by substantial evidence, and whether the consequent conclusion that no liability attached to Southwest Marine was in accordance with law.

There is substantial evidence in the record to support the Commission's finding that Southwest Marine was not a substantial contributing cause of the claimant's disease. This evidence includes medical testimony that this disease usually requires three to five years to develop; since claimant was with Southwest Marine only between 1985 and 1987, it would arguably have been impossible for a record compiled in 1989 to reflect any deleterious effects of this employment. *See Halvorsen v. Larrivy Plumbing & Heating Co.*, 322 N.W.2d 203 (Minn. 1982); *Busse v. Quality Insulation Co.*, 322 N.W.2d 206 (Minn. 1982). This theory, although widely accepted, seems problematic insofar as it may imply that a trier of fact could not find recent exposure to asbestos to have aggravated a prior condition. The Commission, however, seems to have based its conclusion primarily on the far more important and persuasive evidence that Southwest Marine had removed and disposed of all asbestos products "immediately" upon taking over the marine railway. The record therefore contained no evidence that the Southwest Marine employment could have caused or aggravated claimant's asbestos-induced mesothelioma.

Plaintiff points out that the claimant did perform tasks including painting and sandblasting while he worked for Southwest Marine. Although mesothelioma is caused by asbestos and not by painting or

133

sandblasting, there was some evidence in the Commission's record that the claimant may have suffered from other lung diseases as well. The Commission apparently did not regard these other diseases as disabling, however, for it concluded that there was no evidence of deleterious effects from the painting or sandblasting and that the disability was caused by asbestos-related mesothelioma. These conclusions were not unsupported by the evidence; the worst that can be said about them is that a different conclusion might also have been supported by the evidence. This, however, is insufficient to warrant reversal.

Finally, plaintiff argues that ASG and Southwest Marine should be treated as a single employer rather than as two separate employers. Claimant did not resign from one job and go to another; rather, his work place was sold (or otherwise transferred) and the new owner retained most of the old employees. There is no evidence, however, that Southwest Marine assumed ownership or control of anything but the physical plant, or otherwise agreed to assume liabilities of ASG arising out of its prior operation of the marine railway. In the absence of such evidence, the operative facts are (1) that Southwest Marine and ASG are distinct entities; (2) that claimant's employment by one of these entities was shown to have been a cause of his injury; and (3) that his employment by the other entity was not shown to have contributed to the injury.

Finally, plaintiff suggests that the Commission erroneously absolved Southwest Marine of liability on the ground that Southwest was not "at fault." This is not what the Commission decided. Although, as plaintiff observes, the workmen's compensation statute does allow recovery against employers "without regard to fault as to cause of the injury," it does not permit such recovery "without regard to cause" of the injury. *See* A.S.C.A. § 32.0520. Indeed, the statute specifically limits compensation to injuries "arising out of and in the course of" claimant's employment. *Id.* In stressing that Southwest Marine removed the asbestos from the marine railway immediately upon assuming control, the Commission was not rewarding Southwest Marine for being a careful employer; rather, it was drawing a logical inference about whether the injury had anything to do with claimant's employment by Southwest Marine.[2]

---

[2] Plaintiff puts its argument in yet another way by saying that Southwest Marine had produced insufficient evidence to rebut the "presumption of compensability" embodied in A.S.C.A. § 32.0642. We note in passing that this presumption appears intended to embody a pro-claimant bias; it is not a presumption that all employers are liable, and its

134

## II. Liability of ASG as Self-Insurer

Continental also argues for a proportional allocation of the compensation award among the various insurers who carried workmen's compensation insurance for the claimant's employer(s) during the period to which his disease was attributable. As we have upheld the Commission's conclusion that the disease was in no way attributable to the Southwest Marine employment, such apportionment would be among the three insurers who are alleged to have covered ASG during the eighteen years it employed claimant Fuimaono. These are: (1) ASG itself, which was a self-insurer between 1967 and 1973; (2) Hartford Insurance Company, which the parties seem generally to acknowledge as ASG's insurer between 1973 and 1976, but whose status as insurer the Commission found not to have been proved; and (3) plaintiff Continental, the insurer between 1976 and 1985.

A leading authority on workmen's compensation law has said that such apportionment "would be the ideal theory in a perfect world." 4 A. Larson, *The Law of Workmen's Compensation* § 95.12 at 17-111. However, the perceived difficulty of administration and of precise allocation (particularly in occupational disease cases) have caused most courts to reject this approach in favor of the "last injurious exposure" rule. This rule "places full liability upon the carrier covering the risk at the time of the most recent injury that bears a causal relation to the disability." *Id.* § 95.20 at 17-112.

The last injurious exposure rule is "particularly useful for allocating liability in occupational disease situations, which often involve a number of insurers." *Id.* § 95.24 at 17-148. It has been applied in two different situations: those involving multiple employers, and those involving a single employer who has had several insurance carriers. *See, e.g. Osteen v. A.C.& S., Inc.*, 307 N.W.2d 514 (Nebr. 1981) (multiple employers); *Pacific Employers Ins. Co. v. Industrial Comm'n.*, 157 P.2d 800 (Utah 1945) (one employer with multiple carriers). Some courts

---

citation by an insurer intending to escape liability reflects a certain wrenching from context. In this case, moreover, there *was* evidence sufficient to rebut any presumption that claimant's mesothelioma was caused by his employment with Southwest Marine. Not only was there a showing that Southwest Marine used no asbestos in its operations, but the record also suggested a far more obvious explanation for the disease: plaintiff's eighteen years of employment with ASG, which did use asbestos. Once rebutted, the presumption drops out of the case. *See Whitmore v. AFIA Worldwide Insurance*, 837 F.2d 513 (D.C. Cir. 1988).

depart from the rule in the one employer/multiple carriers situation, imposing the whole burden on the last insurer whether or not there was injurious exposure during the insurance period. *See, e.g. Flowers v. Consolidated Container Corp.*, 336 N.W.2d 255 (Minn. 1983).[3]

It is unnecessary, however, for us to decide whether the "last injurious exposure" rule applies in American Samoa as a matter of law. This is because the rule has plainly been adopted as a matter of private contract between ASG and its most recent insurer, plaintiff Continental. The policy provides in pertinent part:

> This policy applies only to injury . . . by disease caused or aggravated by exposure of which the last day of the last exposure, in the employment of the insured, to conditions causing the disease occur during the policy period.

This provision imposes responsibility on Continental for the ASG's liability even if some injury occurred during the self-insurance period (1973 or earlier), as long as the disease was at least aggravated during Continental's policy period (1976 to 1985).

Even if we should be persuaded to reject the last injurious exposure rule in favor of proportional allocation among insurers, the rule thus adopted would be suppletive rather than imperative; that is, employers and insurers would be free to derogate from it by contract. If we were to assess part of the award in the present case against ASG

---

[3] The *Flowers* rule relies on the law of averages to fairly distribute the loss among insurers of the same employer. It may be criticized for abandoning a search for truth in favor of simplicity and ease of administration. Moreover, if imprecision is the reason to reject proportional allocation, it seems awkward to substitute a rule that attempts to ensure fairness through randomness. However, ease of administration and application is a great strength in a system whose overriding purpose is to minimize the obstacles to compensation for injured workers.

It is important to note that the "last insurer" rule (as opposed to the "last injurious exposure" rule) has been applied only in cases where several insurers covered the same employer. The single-employer situation is very different from the case of multiple employers, in that workmen's compensation statutes firmly insist upon causation as an element in the proof of employer liability but have far less to say about the contract between the employer and its insurer(s). Where there was no injurious exposure during the tenure of the last employer, the "requisite causation" for the imposition of liability does not exist. *Bertrand v. API, Inc.*, 365 N.W.2d 222, 224 (Minn. 1985). When there has been only one employer, each new insurance carrier may assess its risk (by, inter alia, reviewing working conditions over previous years) as it assumes an employer's coverage.

as self-insurer, another part against Hartford, and another part against Continental, ASG would still be liable as principal obligor on the entire assessment. Because the record clearly establishes that claimant's disease was at least aggravated during the period of Continental's coverage, Continental would be liable under its contract for any assessment against ASG.[4]

We have no evidence in the record to consider whether Hartford might also be contractually liable under the terms of a policy with ASG, or even that there ever was such a policy. On its face, however, the Continental policy makes it responsible for injuries during the Hartford period, if any, provided they were at least aggravated during the Continental period. Because the policy covers the entire award in the present case, the possible existence of another policy that might also cover the award is not a ground for overturning the Commission's assessment against Continental.

We offer no opinion with respect to whether avenues remain open by which Continental might seek contribution from Hartford, either on a proportional allocation theory or by reference to provisions of the two policies.

### III. Amount of Compensation

The only evidence at the hearing with respect to claimant's wages was his testimony that his wage at the time of his disability was $10.10 per hour. The Commission concluded (apparently as a result of multiplying by forty) that his average weekly wage was $404. The plaintiff contends that the statutory formula for determining the "average weekly wage," A.S.C.A. § 32.0621(d)(1)[5] was not complied with.

---

[4] Continental also offers the suggestion that the entire award be assessed against ASG as self-insurer, on the ground that claimant already had mesothelioma by 1972. This is not what the record reflected or what the Commission found. Claimant was found "possibly" to have displayed early symptoms of mesothelioma in 1972, but not "probably" to have contracted the disease until about 1984. For the reasons stated in the text, moreover, Continental's policy would make it liable for any assessment against ASG even if the claimant did have the disease by 1972, since it was at least aggravated by his exposure to asbestos between 1976 and 1985.

[5] The text of A.S.C.A. § 32.0621(d)(1) reads: "If at the time of the injury the wages are fixed by the day or hour, or by the output of the employee, the average weekly wage shall be the wage most favorable to the employee, computed by dividing by 13 the wages (not including overtime or premium pay) of the employee earned in the employ of

137

The Commission's finding complies with the statute if and only if the Commission was within its authority in assuming (1) that the claimant was a full-time rather than a part-time employee for at least thirteen weeks before the injury; and (2) that his $10.10 hourly wage had remained the same for at least thirteen weeks before the injury. In the absence of any record evidence to the contrary, we cannot say that the Commission erred in making these assumptions. From a record indicating that a person's hourly wage was $10.10 and containing no suggestion that he was other than a full-time employee, a "reasoning mind might reasonably conclude" that his average weekly wage during the last thirteen weeks was $404.

Plaintiff also contends that A.S.C.A. § 32.0621 requires the use of the date of "injury" in calculating the wage, and not the date of disability, which the Commission used. In occupational disease cases, however, the best estimate of the "date of injury" will ordinarily be the date on which the progress of the disease made it impossible for the claimant to continue working. *See* 1B Larson's Workmen's Compensation Law Section 41.84 at 7-546; *Osteen v. A.C.& S., Inc., supra*, 307 N.W.2d at 517.

The plaintiff finally alleges that it was contradictory for the Commission to hold that for compensation purposes the "injury" date was the 1987 disability, while for liability purposes the "injury" ceased in 1985. This is not what the Commission found; it found only that claimant's employment between 1985 and 1987 was not a substantial contributing cause of the injury (i.e., the occupational disease), not that the injury/disease "ceased" in 1985.

For these reasons we decline to overturn the Commission's finding of a weekly wage of $404.00 as unsupported by substantial evidence or not in accordance with law.

*IV. Medical and Travel Expenses*

This issue was not raised below, and so technically cannot be raised here. *McSpadden v. Big Ben Coal Co.*, 288 N.W.2d 181, 184 (1980).

---

the employer in the first, second, third or fourth period of 13 consecutive calendar weeks in the 52 weeks immediately preceding the injury."

In any event, we note that the Commission was clearly correct in finding that the claimant "has incurred and will incur medical expenses and related travel expenses as a result of his disease of mesothelioma." Finding of Fact 13. The Commission concluded that the claimant was entitled to payment of his medical and travel expenses, in accordance with A.S.C.A. § 32.0619. Conclusion of Law 7. The Commission has wide latitude in making this award in the interest of justice, and it did not exceed this discretion.[6] The Commission's findings on medical and travel expenses comply with A.S.C.A. § 32.0619.

Plaintiff will presumably have the opportunity to submit any dispute over the *amount* of any future medical or travel expense claim to the Commission. Any order of the Commission would then be subject to judicial review. The only question addressed thus far by the Commission with respect to medical or travel expenses is the question of *liability* for such expenses. We find no error in the Commission's conclusion or order.

V. *The Commission's Compliance with Statutory Procedures*

The plaintiff complains of several alleged violations of statutory procedures by the Commission.

First, plaintiff claims that adequate notice of the hearing was not given. Ten days notice is required. A.S.C.A. § 32.0628. Plaintiff does not specify how much notice was received, describing it as "none until a few days before",[7] or as having been given in "June, 1989".[8] The hearing was scheduled for June 28, 1989, but was continued for one week. According to Continental's counsel, Oxford Pacific is the agency through which Continental conducts its business in the territory, although it is not itself a carrier. Service on Oxford was made on June 22, 1989; the actual hearing date was July 5, 1989. The Commission found that

---

[6] A.S.C.A. § 32.0619 requires a report within 20 days of the first treatment, but the "commissioner may excuse the failure to furnish such report within 20 days if he finds it to be in the interest of justice to do so, and he may, upon application by a party in interest, make an award for the reasonable value of such medical or surgical treatment so obtained by the employee."

[7] Petitioner's Opening Brief at 12.

[8] Petitioner's Closing Brief 19.

139

sufficient notice of the claim was given in Conclusion of Law 1, and this is supported by substantial evidence. The notice substantially complied with the statute.

Second, the plaintiff complains that there was no medical officer on the Commission. This is true; the medical officer was removed on the plaintiff's own motion and in accordance with A.S.C.A. § 32.0505(e), because the physician was an ASG employee, and the ASG was a party to the proceedings. However, because the only hospital in American Samoa is government operated, *all* practicing physicians in the territory are government employees. The ASG is a large employer in American Samoa, and so this situation must recur. The only alternative to simply doing without the medical officer would be to fly in off-island physicians to sit on each Commission considering claims to which the ASG is a party. It is an established principle of Anglo-Saxon jurisprudence that non-expert judges may, with the help of expert testimony, resolve scientific or medical matters. The Commission substantially complied with A.S.C.A. § 32.0505, governing the makeup of the Commission. (In any case, plaintiff made no objection below to going forward without a medical member of the Commission. It cannot raise this issue for the first time on judicial review.)

Third, plaintiff contends that the Commission failed to order a medical examination as required under A.S.C.A. § 32.0638. This section provides that an "injured employee . . . shall submit to such physical examination . . . as the commissioner may require." This provision does not require the Commission to order an examination, but instead requires the claimant to submit to any examination which the Commission does order.

Fourth, the plaintiff seeks to invoke A.S.C.A. § 32.0613, which addresses injuries increasing existing impairments. This section is inapplicable unless the employer has shown with written records knowledge of the impairment when the claimant was hired. A.S.C.A. § 32.0913(d). Also, the provision is of dubious applicability in this case because the injury and impairment are one and the same. There is no injury which increased an impairment, but rather only the progression of one debilitating disease. Moreover, the disease almost certainly did not exist at the time claimant Fuimaono was employed by plaintiff's principal, ASG.

Lastly, plaintiff levels the general complaint that the Commission failed to "best ascertain the rights of the parties," under A.S.C.A. §

140

32.0640. A.S.C.A. § 32.0640 reads, "[i]n . . . conducting a hearing, the commissioner . . . may . . . conduct such hearing in such a manner as to best ascertain the rights of the parties." Upon review of the Commission's procedures, it appears that the Commission satisfied the requirements of A.S.C.A. § 32.0640.

VI. Conclusion

In summary, the Commission's findings are supported by substantial evidence and its order was in accordance with the law. The petition to set aside the order must therefore be dismissed.

It is so ordered.